CACI, INC., Appellant,

v.

Michael P.W. STONE, Secretary of the Army, Appellee,

and

VSE Corporation, Intervenor.

No. 92–1163.

United States Court of Appeals, Federal Circuit.

April 9, 1993.

Ronald E. Gilbertson, Kilcullen, Wilson & Kilcullen, Chartered, Washington, DC, argued for appellant. With him on the brief was Peter M. Kilcullen.

Jeffrey Bernstein, Attorney, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. James J. McCullough, Fried, Frank, Harris, Shriver & Jacobson, (A Partnership Including Professional Corporations), Washington, DC, argued for intervenor. With him on the brief was Deneen J. Melander.

NEWMAN, MICHEL and PLAGER, Circuit Judges.

PLAGER, Circuit Judge.

The General Services Administration Board of Contract Appeals (Board) declined to suspend defendant Secretary of the Army's (Army) contract with intervenor VSE Corporation (VSE), even though the Board found that the contract violated regulations because the Army had failed to obtain a prior delegation of procurement authority (DPA). *Protest of CACI, Inc.*, No. 11523–P, 1991 WL 286232 (GSBCA Dec. 19, 1991). Appellant CACI, Inc. (CACI) appeals that decision. Because we find that the contract is void for lack of procurement authority, we reverse the Board's decision.

### BACKGROUND AND PROCEDURAL HISTORY

The Department of the Army, U.S. Army Troop Support Command, solicited bids on April 1, 1991 for providing engineering services and data processing support services to Belvoir Research, Development and Engineering Center. Appellant CACI and intervenor VSE were among the companies that submitted bids in response. The con-

tract was awarded to VSE on September 30, 1991, and CACI filed a protest with the Board on October 15, 1991. The protest had four counts: Count I alleged that the Army had violated Federal Information Resources Management Regulations, 41 C.F.R. subpart 201–23.1 (1990), by failing to obtain a DPA from the Administrator of General Services Administration (GSA) before proceeding with the acquisition; Count II attacked the adequacy of the Army's discussions with bidders; Count III alleged that agency actions may have given VSE an improper advantage; and Count IV alleged that the Army's evaluation of the proposals was improper.

CACI moved for summary relief on Count I, requesting an order suspending the procurement until the Army obtained a DPA. On November 15, 1991, the Board denied the relief sought. The Board found no factual dispute concerning the lack of the required DPA: "The Army candidly acknowledges that it did not obtain one, although it was required to do so ..." The Board declined, however, to suspend contract performance (by suspending GSA's procurement authority) until the Army obtained a DPA, because a suspension of VSE's on-going services would be disruptive and detrimental to the Army's mission. In a separate opinion on the same date, the Board denied the Army's motion to dismiss Counts II and III (as failing to state a valid basis of protest) and Count IV (as untimely because CACI should have known the basis for the count earlier).

In its December 19, 1991 final decision on the merits, the Board again refused to suspend the contract, because the Army needed the services on an on-going basis and had taken necessary steps to obtain a DPA with dispatch. CACI appealed to this court.

## DISCUSSION

The Board's decision on a question of law is not final or conclusive, although its decision on a question of fact is final unless fraudulent, arbitrary, capricious, so grossly erroneous as to necessarily imply bad faith, or unsupported by substantial evidence. 41 U.S.C. § 609(b).

The two issues before us are purely legal in nature and thus freely reviewable: (1) for purposes of decision, may we disregard the Army's concession to the Board that a DPA was required for the contract, and (2) does the Army's failure to obtain a DPA before contracting for VSE's services render the contract void?

### A.

 The Army asks us to disregard its earlier concession that a DPA was required, because the Army's former position resulted from a misinterpretation of the applicable regulations. The 1991 regulations required acquisition-specific DPAs for all automatic data processing (ADP) services (now called federal information processing (FIP) services), both support-type and non-support-type, with value exceeding $2.5 million. 41 C.F.R. § 201–20.305–1 (1991). This regulation was effective April 29, 1991. 55 Fed.Reg. 53,386 (1990); 56 Fed. Reg. 4,948 (1991). Under these regulations the Army would have been required to obtain a DPA for the contract in question because the expected cost of the services was $3 million (according to Solicitation Sec. H.15). Under the 1990 regulations, specific DPAs were required for ADP *non-support* services contracts with value exceeding $2 million. 41 C.F.R. § 201–23.-104–5 (1990). A 1990 regulation, however, gave agencies blanket procurement authority to contract for ADP *support* services, regardless of cost, without prior approval. 41 C.F.R. § 201–23.104–6 (1990). This regulation was effective October 1, 1990. 55 Fed.Reg. 30,702 (1990); 55 Fed.Reg. 34,719 (1990).

The Army and VSE now argue that the Army had blanket procurement authority for its contract with VSE because first, the 1990 regulations were still in effect when the bid solicitation was published on April 1, 1991, and second, the contract was for ADP *support* services. The Army thus asserts that it should not be bound by its earlier mistaken interpretation of the law.

CACI argues that, since the existence of a blanket procurement authority depends on whether the contract was for ADP support services or non-support services, and since this is an issue that the Army did not raise below, the Army has waived the issue. Thus, says CACI, the Army must be bound by its concession that a DPA was required.

The Army admitted to the Board that a DPA was required but had not been obtained. It is too late now for the Army to change its position and thereby assert for the first time on appeal a point which it did not raise before the Board. Because of the Army's admission, the Board made no factual findings or conclusions on the issue of a blanket procurement authority. The proper time for the Army to have raised this issue, which turns on underlying factual questions, was before the Board; it would be unfair to appellant and would disrupt the orderly conduct of litigation if we allowed the Army to change its position at this stage. *See Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 839 F.2d 1544, 1549, 5 USPQ2d 1779, 1783 (Fed.Cir.1988) (on appeal, Jamesbury cannot dispute its factual admissions after failing to raise the question in district court), *cert. denied,* 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988), *and overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 22 USPQ2d 1321 (Fed.Cir.1992) (en banc); *cf. CPG Prods. Corp. v. Pegasus Luggage, Inc.* 776 F.2d 1007, 1010, 227 USPQ 497, 498 (Fed. Cir.1985) (appellant cannot argue issue that it failed to raise before at trial); *cf. Lizut v. Department of Army,* 717 F.2d 1391, 1396 (Fed.Cir.1983) ("Allowing a party to withhold important issues from the [Merit Systems Protection] board and later present them to this court would undermine the board's authority").

### B.

40 U.S.C. § 759 vests in the GSA Administrator exclusive authority to provide for the purchase, lease and maintenance of ADP equipment. *Contel Fed. Sys., Inc.,* No. 11060–P, 91–2 B.C.A. (CCH) ¶ 23,764 at 119,035, 1991 WL 19158 (GSBCA Feb. 12, 1991). The Administrator may delegate this authority to agencies when necessary for economy and efficiency. 40 U.S.C. § 759(b)(1).

CACI argues that because the Army had no delegation of procurement authority from GSA, the Army had no actual authority to contract with VSE, and therefore the contract is void. VSE argues that the contract is not void because CACI has not shown the plain illegality required by *John Reiner & Co. v. United States,* 325 F.2d 438, 163 Ct.Cl. 381 (1963), *cert. denied,* 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964), and its progeny. VSE contends that the absence of a DPA is not such a plain illegality, in view of prior Board decisions that consider the lack of a DPA to be a remediable error which need not nullify the contract.

The issue is one that this court has not directly addressed before.[1] In *Reiner,* the Court of Claims held that:

In testing the enforceability of an award made by the Government, where a problem of the validity of the invitation or the responsiveness of the accepted bid arises after the award, the court should ordinarily impose the binding stamp of nullity only when the illegality is plain. If the contracting officer has viewed the award as lawful, and it is reasonable to take that position under the legislation and regulations, the court should normally follow suit.

*Id.* at 440. The court subsequently explained that plain illegality exists when "we find the illegality in the award to be plain on the face of the statute and the regulations.... Where illegality is clear, we have no choice but to hold the award and contract to be invalid." *Schoenbrod v. United States,* 410 F.2d 400, 404, 187 Ct.Cl. 627 (1969).

---

1. *But see United States v. Amdahl Corp.,* 786 F.2d 387, 392 (Fed.Cir.1986) (dicta stating that a contracting officer's failure to comply with statutory requirements in making an award renders the contract null and void).

In *Protest of Computervision Corp.,* No. 8709–P, 87–1 B.C.A. (CCH) ¶ 19,518, 1986 WL 20336 (GSBCA Dec. 16, 1986), the Board held to the contrary. The Board explained that while a failure to obtain a DPA is serious, it is a remediable deficiency that "does not necessarily nullify and render void the solicitation and all actions taken pursuant." *Id.* at 98,651–52. We disagree. There can be no clearer example of a case in which the illegality is plain and clear than one in which there is a facial absence of actual authority to enter into the contract. The Board's only support for its position was its conviction that "[i]t would be contrary to the goals of economic and efficient procurement to declare the award a nullity and thus preclude respondent from exploring with GSA officials a course of action which might cure deficiencies in the procurement." *Id.* However, its policy rationale has no basis in law. Thus, to the extent that the Board held that a government procurement or contract may proceed without a valid DPA, the Board was in error.

As the Claims Court has said:

> It is a well recognized principle of procurement law that the contracting officer, as agent of the executive department, has only that authority actually conferred upon him by statute or regulation. If, by ignoring statutory and regulatory requirements, he exceeds his actual authority, the Government is not estopped to deny the limitations on his authority, even though the private contractor may have relief on the contracting officer's apparent authority to his detriment, for the contractor is charged with notice of all statutory and regulatory limitations.

*Prestex, Inc. v. United States,* 320 F.2d 367, 371, 162 Ct.Cl. 620 (1963).

 The government "is not bound by its agents acting beyond their authority and contrary to regulation." *Urban Data Sys., Inc. v. United States,* 699 F.2d 1147, 1153 (Fed.Cir.1983) (quoting *Yosemite Park & Curry Co. v. United States,* 582 F.2d 552, 558 (Ct.Cl.1978)). *See also Office of Personnel Management v. Richmond,* 496 U.S. 414, 428, 110 S.Ct. 2465, 2473, 110 L.Ed.2d 387 (1990) (agencies' unauthorized statements to citizens cannot obligate the Treasury for the payment of funds). A contractor who enters into an arrangement with an agent of the government bears the risk that the agent is acting outside the bounds of his authority, even when the agent himself was unaware of the limitations on his authority. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

We note that 40 U.S.C. § 759(f)(5)(B) gives the Board discretion to suspend, revoke, or revise an ADP services contract by suspending, revoking, or revising the Administrator's procurement authority:

> If the board determines that a challenged agency action violates a statute or regulation or the conditions of any delegation of procurement authority issued pursuant to this section, the board may suspend, revoke, or revise the procurement authority of the Administrator or the Administrator's delegation of procurement authority applicable to the challenged procurement.

However, the language of this provision does not permit the Board to ratify a contract that an agency had no authority to create initially. If the language is clear, the plain meaning of the statute will be regarded as conclusive. *See Sullivan v. Stroop,* 496 U.S. 478, 482, 110 S.Ct. 2499, 2502, 110 L.Ed.2d 438 (1990); *K–mart Corp. v. Cartier, Inc.* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988); *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1579, 16 USPQ2d 1614, 1618 (Fed.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991).

Thus, because the Army lacked procurement authority to contract with VSE and the Board has no power to ratify the contract or otherwise cure this fatal defect, we find that the contract is void. This does not mean that minor deviations from the applicable regulations will automatically render a contract void. *Cf. Andersen Consulting v. United States,* 959 F.2d 929, 932 (Fed.Cir.1992) (minimal errors in procure-

ment do not require the Board to grant a protest). But there cannot be a contract when the government agent lacks actual authority to create one.

## CONCLUSION

The decision of the Board is

*REVERSED.*