**GOULD, INC., Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 94–5040.**

United States Court of Appeals, Federal Circuit.

Oct. 11, 1995.

---

Michael T. Janik, McKenna & Cuneo, Washington, DC, argued for plaintiff-appellant. With him on the brief was Jamie Kent Hamelburg.

Arnold M. Auerhan, Commercial Litigation Branch, Department of Justice, Washington, DC, argued for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director and Jeanne E. Davidson, Assistant Director. Also on the brief was Andrei Kushner, Associate Counsel, Office of the General Counsel, Department of Navy, Washington, DC, of counsel.

Before ARCHER, Chief Judge, NEWMAN and PLAGER, Circuit Judges.

PLAGER, Circuit Judge.

This long-running contract dispute is before the court again. In this appeal, Gould, Inc. (Gould) appeals the judgment of the United States Court of Federal Claims, *Gould, Inc. v. United States*, 29 Fed.Cl. 758 (1993), dismissing again its complaint against the United States, this time for lack of jurisdiction. We again *vacate* and *remand.*

## BACKGROUND

In 1983, the Naval Electronics Systems Command (Navy) solicited bids for a fixed-price, five-year contract to produce "Bancroft"-type radios.[1] In its request for proposals (RFP), the Navy included detailed performance specifications for the radios. In addition, the RFP included drawings, labelled "for informational purposes only," of prior Bancroft radios that had been developed for the Army.

On October 3, 1983, the Navy awarded Gould the Contract, No. N00039–83–C–0407 (the '0407 Contract), for a fixed price of $44,778,779. Gould contends that its bid, in part, reflected a belief that it could simply modify the Army Bancroft radio to satisfy the Navy's enhanced performance requirements. However, when Gould's attempts to modify failed, it expended additional time, in excess of that contemplated when bidding on the contract, completely redesigning the radio. During contract performance, the Navy provided Gould with data which confirmed Gould's findings that simply upgrading the Army's radio would not meet the performance requirements of the Navy contract. According to Gould, it had requested this information from the Navy during the pre-award conference.

On December 11, 1986, Gould submitted a certified claim to the contracting officer seeking an "equitable reformation and upward adjustment in the price of [the] contract." Gould sought more than $57 million in added costs due to the unanticipated design work that Gould had performed under the contract. In support of its requested relief the claim contained three separate counts. In Count one, Gould alleged that the Navy had violated 10 U.S.C. § 2306(h)(1)(D) (1982) by failing to supply a "stable design" for the multi-year contract,[2] thereby making the contract illegal. Count two alleged that the Navy improperly withheld information that would have apprised bidders of "the degree of design effort and risk involved in meeting the Navy's performance specification." Count three alleged that there was a mutual mistake by both Gould and the Navy regarding a basic assumption of the contract, namely that there was only minimal design and development work to be performed under the contract.[3]

On January 6, 1988, the contracting officer issued a decision denying Gould's claim. Gould appealed that decision to the then Claims Court pursuant to 41 U.S.C. § 609(a)(1) (1988). In addition to raising jurisdictional issues, the government moved to dismiss for failure to state a claim upon which relief can be granted.

In a decision dated January 16, 1990, the Claims Court granted the government's motion. *Gould, Inc. v. United States*, 19 Cl.Ct. 257 (1990) (*Gould I*). The court took

---

**1.** A "Bancroft"-type radio is a VHF–FM radio built to certain military specifications. *See* MIL–T–49129 (EL) (1977).

**2.** The statute provides:

(h)(1) To the extent that funds are otherwise available for obligation, the head of an agency may make multiyear contracts (other than contracts described in paragraph (6)) for the purchase of property, including weapon systems and items and services associated with weapon systems (or the logistics support thereof), whenever he finds—

\* \* \* \* \* \*

(D) that there is a stable design for the property to be acquired and that the technical

risks associated with such property are not excessive.

10 U.S.C. § 2306(h)(1)(D) (1982).

**3.** Counts II and III of Gould's amended complaint both incorporate the allegation in Count I that the contract was entered into in violation of 10 U.S.C. § 2306(h)(1)(D).

Gould's claim as one for contract reformation. Although this was an equitable remedy, the court concluded that it had jurisdiction to hear the suit because if Gould prevailed on the merits it would be entitled to a money judgment. The court then focused on whether Gould was entitled to contract reformation under any of the three counts in Gould's complaint. The court concluded that the answer was no, that Gould had not alleged facts sufficient to support its claim for contract reformation based on any of the three counts. The Claims Court dismissed the complaint under Rule 12(b)(4) of the Rules of the United States Claims Court for failure to state a claim upon which relief can be granted.

On June 7, 1991, we vacated the decision of the Claims Court and remanded the case for trial. *Gould, Inc. v. United States*, 935 F.2d 1271 (Fed.Cir.1991) (*Gould II*). We held that (i) Gould had not limited its claim to one for contract reformation, and (ii) Gould's complaint contained sufficient facts to state a claim upon which relief could be granted.

Upon remand, the government filed a motion to dismiss for lack of jurisdiction. In an opinion dated October 29, 1993, the Court of Federal Claims [4] granted the government's motion. *Gould, Inc. v. United States*, 29 Fed.Cl. 758 (1993) (*Gould III*). The court found:

> Because Gould's complaint is based solely on a contract with the United States and yet it alleges both that there was no stable design and that the contract (whether express or implied in fact) was illegal, the only possible basis for contract jurisdiction is a contract implied in law. The Tucker Act's grant of jurisdiction is limited, however, to cases based "upon any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1) (1988). Implied-in-law contracts, if contracts at all, are not contracts within this court's jurisdiction. *Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *City of El Centro v. United States*, 922 F.2d 816, 823 (Fed.Cir.1990).

*Id.* at 761 (footnotes omitted). Furthermore, the court held that payment on Gould's claim was barred by the Supreme Court's decision in *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), and that our decision in *Gould II* was not binding on the Court of Federal Claims as the law of the case. Although acknowledging that the law of the case doctrine typically requires a lower court, on remand, to follow the decision of the reviewing court, the Court of Federal Claims concluded that the law of the case doctrine did not apply for two reasons: first, subsequent controlling authority, namely *Richmond*, conflicts with our decision in *Gould II;* and second, the issues before the trial court were not addressed by the Court of Appeals in *Gould II*. Therefore, the Court of Federal Claims granted the government's motion, dismissing Gould's complaint. This appeal followed.

## DISCUSSION

### I.

▪ Whether a motion to dismiss for lack of jurisdiction has been properly granted is a question of law subject to complete and independent review on appeal. *Shearin v. United States*, 992 F.2d 1195 (Fed.Cir. 1993). Gould's amended complaint maintains that jurisdiction of this action lies in the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491. The Tucker Act "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). An action may be maintained under the Tucker Act only if it is "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1992). Gould relies solely on its contract

---

**4.** The Claims Court was renamed the Court of Federal Claims pursuant to § 902 of the Federal Courts Administration Act of 1992, Pub.L. No.

102–572, 106 Stat. 4506, 4516 (1992), effective October 29, 1992.

with the government, the '0407 Contract, as a basis for jurisdiction in the Court of Federal Claims.

The government argues that the contracting officer lacked actual authority to enter into an express or implied-in-fact contract with Gould, and therefore Gould's only theory of recovery is under an implied-at-law claim which is outside the jurisdiction of the Court of Federal Claims. In its amended complaint Gould alleged that its procurement contract with the government was entered into in violation of law since the government did not provide a "stable design" as required in 10 U.S.C. § 2306(h)(1)(D). Given Gould's allegation, argues the government, no contract (express or implied-in-fact) could have arisen because a contracting officer does not have actual authority to enter into illegal contracts. Therefore, the government argues, the Court of Federal Claims correctly found that the only possible basis for contract jurisdiction is a contract implied-at-law. Since it is well established that such claims are outside the jurisdiction of the Court of Federal Claims, the government concludes that the trial court properly dismissed Gould's amended complaint for lack of jurisdiction.

■ As an initial matter, the government mischaracterizes the issue in this case. In *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679 (Fed.Cir.1992), we discussed the differences between a dismissal for lack of jurisdiction and a dismissal for failure to state a claim upon which relief can be granted. Jurisdiction in this context refers to the power of a court to hear and decide a case—subject matter jurisdiction. *Id.* at 686. A dismissal for lack of jurisdiction means that the subject-matter of the dispute is one that the court is not empowered to hear and decide.

■ A dismissal for failure to state a claim, however, is a decision on the merits which focuses on whether the complaint contains allegations, that, if proven, are sufficient to entitle a party to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (A motion to dismiss for failure to state a claim should only be granted when "it appears beyond

doubt that the plaintiff can prove no set of facts in support of [the] claim which would entitle him to relief."). In *Do–Well Mach. Shop, Inc. v. United States*, 870 F.2d 637 (Fed.Cir.1989), we explained the differences between a dismissal for lack of jurisdiction and one for failure to state a claim upon which relief can be granted in the context of determining whether a time bar provision in a contract went to the jurisdiction of the forum or was a question of failure to state a claim for which relief could be granted. We said:

> The distinction between lack of jurisdiction and failure to state a claim upon which relief can be granted, is an important one: "[T]he court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy. Jurisdiction, therefore, is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover...."

*Id.* at 639–40 (quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)).

■ The issue in this appeal is not jurisdiction, but whether Gould stated a claim upon which relief can be granted. First, there is no question that Gould's complaint alleges the existence of an express contract, albeit one entered into allegedly in violation of 10 U.S.C. § 2306(h)(1)(D). This is sufficient, however, to confer jurisdiction in the Court of Federal Claims. The government's argument that Gould's allegation of illegality voided the procurement contract, thereby divesting the Court of Federal Claims of jurisdiction, ignores our precedent which states that a "court should ordinarily impose the binding stamp of nullity only when the illegality is plain." *John Reiner & Co. v. United States*, 325 F.2d 438, 440, 163 Ct.Cl. 381 (1963), *cert. denied*, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964). "[P]lain illegality exists when 'we find the illegality in the award to be plain on the face of the statute and the regulations....'" *CACI, Inc. v. Stone*, 990 F.2d 1233, 1235 (Fed.Cir.1993) (quoting *Schoenbrod v. United States*, 410

F.2d 400, 404, 187 Ct.Cl. 627 (1969)). The illegality in this case, if there is one, turns on questions of fact and the terms of the contract in dispute. The Court of Federal Claims must first take jurisdiction over the case before it decides on this record whether an illegality is "plain"; the proper basis for such a dismissal, if it is in fact warranted, is failure to state a claim upon which relief can be granted.

■ Second, even if Gould's allegations of an express contract are found insufficient, Gould's amended complaint, when viewed in a light most favorable to Gould, alleges the existence of an implied-in-fact contract—a separate basis of jurisdiction in the Court of Federal Claims. *United States v. Amdahl Corp.*, 786 F.2d 387, 392–93 (Fed.Cir.1986), explains that a contractor can be compensated under an implied-in-fact contract when the contractor confers a benefit to the government in the course of performing a government contract that is subsequently declared invalid. The court reasoned that "[e]ven though a contract be unenforceable against the Government, because not properly advertised, not authorized, or for some other reason, it is only fair and just that the Government pay for goods delivered or services rendered and accepted under it." *Id.* at 393 (quoting *Prestex, Inc. v. United States*, 320 F.2d 367, 373, 162 Ct.Cl. 620 (1963)). The Court of Federal Claims must first assume jurisdiction in order to determine whether Gould conferred a benefit on the government during performance under the '0407 Contract, and, if so, whether such performance entitles Gould to relief.

The government's argument that *Richmond*, 496 U.S. 414, 110 S.Ct. 2465, bars recovery under the *Amdahl* theory of relief misses the point. In *Richmond*, the Supreme Court held that erroneous advice given by a government employee to a person seeking disability benefits could not estop the government from denying benefits that were not otherwise permitted by law. Gould's rights are not premised on a statutory entitlement, but on a contract claim. It would be stretching *Richmond* totally out of context to apply it here.

## II.

Regardless of the label the government places on its present motion, the issue on appeal is whether Gould stated a claim upon which relief can be granted. This is the same issue we addressed in *Gould II*, when we concluded that Gould had stated a claim upon which relief can be granted.

■ "The law of the case is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts." *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1550 (Fed.Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988), *overruled on other grounds by, A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed.Cir. 1992). Under this doctrine a court adheres to a decision in a prior appeal in the same case unless one of three exceptional circumstances exist: (1) the evidence in a subsequent trial is substantially different; (2) controlling authority has since made a contrary decision of the law applicable to the issues; or (3) the earlier ruling was clearly erroneous and would work a manifest injustice. *Gindes v. United States*, 740 F.2d 947, 950 (Fed. Cir.), *cert. denied*, 469 U.S. 1074, 105 S.Ct. 569, 83 L.Ed.2d 509 (1984) (quoting *White v. Murtha*, 377 F.2d 428, 432 (5th Cir.1967)).

Since the government seeks to relitigate in this appeal the issue of whether Gould stated a claim upon which relief can be granted, it must show that one of these exceptional circumstances is present. The government argues that subsequent controlling authority precludes recovery in this case.[5] Specifical-

---

5. The government also argues that the law of the case does not apply because we never addressed the issue of actual authority in *Gould II*. But this appeal raises the same grounds for dismissal that we considered and rejected in *Gould II*— whether Gould stated a claim upon which relief can be granted. To allow the government to make new arguments regarding the same grounds for relief would violate the purpose of the law of the case doctrine. *See Gindes*, 740 F.2d at 949 ("[N]o litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favor-

ly, the government maintains that our court's decision in *CACI, Inc. v. Stone*, 990 F.2d 1233 (Fed.Cir.1993), bars relief under the *Reiner* theory of recovery because we held, in *CACI*, that the absence of actual contracting authority voids an illegal contract. Furthermore, the government maintains that the Supreme Court's decision in *Richmond* bars relief under the theory of recovery set forth in *Amdahl*. These cases do not justify revisiting the same issue we decided in *Gould II.*

In *CACI*, the Army entered into a contract with VSE Corporation without obtaining a prior delegation of procurement authority (DPA) as required by regulation, 41 C.F.R. § 201–20.305–1 (1991). *CACI* at 1234–35. In an action by CACI to suspend the contract, CACI argued that because GSA had not delegated procurement authority to the Army prior to awarding VSE the contract, the Army had no actual authority to contract with VSE, and therefore the contract was void. *Id.* at 1235. VSE countered that the contract was not void because it was not plainly illegal as required in *Reiner*. *Id.* Applying the standard set forth in *Reiner*, the court concluded that the Army's failure to obtain a DPA was a plain and clear error of law, and therefore the contract was void. Accordingly, *CACI* did not overrule the holding of *Reiner*, as suggested by the government, but merely applied the law in *Reiner* to the particular facts in that case.

■ Regarding *Richmond*, upon which the government heavily relies, we explained above why that case is beside the point. Furthermore, it was decided before we issued our opinion in *Gould II;* it is not subsequent controlling authority. Despite the government's failure to cite to *Richmond* in its prior appeal, we were aware of this case when we issued our decision in *Gould II.* We fail to see how this prior precedent can be a basis for refusing to apply the law of the case doctrine.

The issue of whether Gould stated a claim upon which relief can be granted is law of the case. The judgment of the Court of Federal Claims is vacated and the case is remanded,

a second time, for trial. This matter is approaching its tenth anniversary and Gould has yet to get its first hearing on the merits. Justice delayed is indeed justice denied. We trust that the Court of Federal Claims will expedite giving Gould the trial of its issues to which it is entitled.

**VACATED AND REMANDED.**

able result the second time. The purpose of the law-of-the-case principle is to provide finality of judicial decisions.'') (quoting *United States v. Tur-*

*tle Mountain Band of Chippewa Indians,* 612 F.2d 517, 520–21, 222 Ct.Cl. 1 (1979)) (citations omitted).