95 F.3d 1167
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Wayne H. BOUCHER, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 96-5036.
 United States Court of Appeals, Federal Circuit.
 Aug. 13, 1996.
 
 Before MICHEL, CLEVENGER, and BRYSON, Circuit Judges.
 
 DECISION
 PER CURIAM
 
 1
 Wayne H. Boucher appeals from a decision of the Court of Federal Claims entering judgment for the United States on Boucher's claim for breach of contract. We affirm.
 
 BACKGROUND
 
 2
 Boucher, a Minnesota farmer, owns a number of shares of preferred stock of the American Crystal Sugar Company, a cooperative that owns and operates sugar refineries in northern Minnesota. The number of preferred shares a farmer owns determines how many acres of sugar beets he can grow and sell to the cooperative. A shareholder who decides not to exercise the rights conferred by his stock ownership is allowed under the cooperative's by-laws to form a joint venture with a farmer who is willing to grow and sell sugar beets to the cooperative. Before the cooperative will approve such an arrangement, the stock certificates must be delivered to the cooperative and retitled in the name of the joint venture.
 
 
 3
 In October 1990, the Farmers Home Administration (FmHA) lent Boucher $103,000 to pay off an operating loan Boucher had obtained from a local bank. Prior to the October loan, Boucher already was indebted to FmHA for $298,000. As part of the collateral for the October loan, Boucher pledged his American Crystal shares pursuant to a security agreement with FmHA. FmHA then took possession of the stock certificates to perfect its security interest in the stock.
 
 
 4
 After being unable to obtain an operating loan from a local bank to farm during the 1991 season, Boucher apparently became interested in entering a joint venture arrangement with another farmer who would grow and sell sugar beets under the authority of Boucher's stock. Boucher alleges that in March and April 1991 he requested that FmHA temporarily release the stock certificates to American Crystal so that the certificates could be retitled in the name of the joint venture, but that the local FmHA office refused to comply with his requests. As a result, he asserts, he lost the royalties he would have earned for the 1991 season if the joint venture had proceeded.
 
 
 5
 In November 1991, Boucher informed FmHA officials that he might enter a joint venture for the 1992 season. On March 9, 1992, Boucher confirmed his plans in a meeting with Randall Tufton, FmHA's county supervisor. At the meeting, Tufton outlined certain conditions that would have to be satisfied before FmHA could release the stock certificates for retitling in the name of a joint venture. The conditions included Boucher's completion of various government forms and FmHA's approval of the specific joint venture arrangement. Boucher did not object to the conditions. Tufton followed up with a letter on April 1 restating the conditions and advising prompt action, given the impending start of the growing season. On April 28, Boucher submitted the necessary paperwork for FmHA approval of a joint venture that he planned to enter with his brother and father. Tufton obtained FmHA approval on May 4 and delivered the stock certificates on May 6 to American Crystal, which then issued the retitled certificates on May 22. Because the certificates were retitled relatively late in the growing season, Boucher obtained a diminished royalty rate for the use of his stock in the joint venture.
 
 
 6
 Boucher filed suit in the Court of Federal Claims, alleging that FmHA officials had denied him the use of his stock by refusing his requests to allow the stock to be retitled in 1991 and by imposing unreasonable conditions on the retitling in 1992. Boucher invoked the court's jurisdiction under the Tucker Act by alleging that FmHA's actions were breaches of the October 1991 security agreement in which he pledged the stock as collateral to secure an FmHA loan. See Gould v. United States, 67 F.3d 925, 929 (Fed.Cir.1995). After a trial, the Court of Federal Claims found that FmHA
 
 
 7
 was aware of its legal responsibilities to plaintiff, as an owner of pledged securities, ... did not deprive plaintiff of the opportunity to present a properly documented request for temporary release of collateral to facilitate retitling, ... did not decline to act on a properly documented request for temporary release of collateral to facilitate retitling, ... did not impose unlawful constraints upon the right of plaintiff, as an owner of pledged securities, to exercise the property rights inherent in those securities. Those conditions which the FmHA did impose ... represent requests for information essential to FmHA's regular bookkeeping requirements and as such are legitimate demands on the part of the [agency].
 
 
 8
 The court thus held that Boucher had failed to prove his case and consequently directed that judgment be entered against him.
 
 DISCUSSION
 
 9
 On appeal, Boucher first challenges the finding by the Court of Federal Claims that FmHA officials did not refuse requests by Boucher to release the collateral for retitling in 1991. In his brief, Boucher alleges that he asked Tufton, the FmHA county supervisor, if the agency would send the stock to American Crystal, but that "[t]he request was refused." Boucher admitted at trial, however, that in the March 1991 meeting between Tufton and Boucher, the subject of leasing the rights under the stock never came up. Boucher also alleges that Tufton told Steve Sing, an official at American Crystal, that releasing the stock was not possible. The most that can be gleaned from the record, however, is that Sing "formed the impression" that FmHA was not happy about a possible joint venture concerning the stock. In short, there was no evidence that FmHA was specifically asked to release the stock certificates in 1991 and refused the request.
 
 
 10
 As for the delay in retitling the stock certificates in the spring of 1992, Boucher asserts that the delay was the result of FmHA's imposing unreasonable conditions on the release of the certificates. The record fails to show, however, that Boucher objected to the conditions at any time before FmHA released the certificates, and most of the conditions simply related to paperwork that would permit FmHA to maintain proper records and process Boucher's request to release the collateral. Once Boucher had provided most of the requested paperwork, FmHA promptly processed and approved the request to release the collateral.
 
 
 11
 Boucher has not pointed to any provision in the security agreement that prohibited FmHA from imposing conditions on the release of the certificates. Nor has he proved that FmHA's actions violated the implied duty on its part to act in good faith in administering the security agreement. A secured party is entitled to place reasonable conditions on the release of collateral, even if, as here, the risk of loss of the collateral appears to be low. Because Boucher did not establish that FmHA imposed unreasonable conditions on the release of the certificates or otherwise unreasonably interfered with his ability to make use of his pledged stock, the trial court correctly held that Boucher failed to prove that FmHA violated his rights under the security agreement.