Dissenting opinion filed by Circuit Judge Dyk.
Hughes, Circuit Judge.
Veterans Contracting Group, Inc., appeals from a decision of the United States Court of Federal Claims holding that the Department of Veterans Affairs did not act arbitrarily or capriciously when it cancelled a roof replacement solicitation set aside for service-disabled veteran-owned small businesses. Because the contracting officer acted rationally in requesting cancellation based on the record before him, we affirm.
I
A.
The government sets aside certain contracting opportunities for service-disabled veteran-owned small businesses (SDVOSBs). See Kingdomware Techs., Inc. v. United States , --- U.S. ----, 136 S.Ct. 1969, 1973, 195 L.Ed.2d 334 (2016). Two agencies are responsible for managing procurements on SDVOSB set-aside contracts: the Department of Veterans Affairs (VA) and the Small Business Administration (SBA). The VA regulates its own procurements, while the SBA regulates the procurements of all other agencies. Although the VA and the SBA systems overlap in many respects, they are governed by different statutory provisions. See 38 U.S.C. § 8127 (VA) ; 15 U.S.C. § 657f (SBA). This appeal concerns the system run by the VA.
Under VA regulations, a business may only compete for SDVOSB set-aside contracts if it has registered with the VA's Center for Verification and Evaluation. See 38 U.S.C. §§ 8127(e) - (f) ; 38 C.F.R. §§ 74.11, 74.20. If the Center determines that a business qualifies as an SDVOSB, it adds that business to a centralized database called VetBiz. See 38 U.S.C. §§ 8127(e) - (f) ; 48 C.F.R. § 804.1102 ; 38 C.F.R. §§ 74.11, 74.20. During procurement, contracting officers can only consider bids submitted by businesses listed on VetBiz. See 38 U.S.C. § 8127(e) ; 48 C.F.R. § 804.1102. If the business is not in the database when bidding closes, the contracting officer cannot consider its bid. See 38 U.S.C. § 8127(e) ; 48 C.F.R. § 804.1102.
A business is eligible to compete for SDVOSB contracts if one or more veterans "unconditionally" own a majority interest in the company. See 38 C.F.R. § 74.2(a) (VA) ; see also 13 C.F.R. § 125.12 (SBA). In 2017, the VA and the SBA applied different definitions of "unconditional"
*804 ownership.[1] According to the VA, ownership was unconditional if it was free from "arrangements causing or potentially causing ownership benefits to go to another." See 38 C.F.R. § 74.3(b) (2017). The VA exempted arrangements conditioned "after death or incapacity" from this limitation. See id. The SBA, on the other hand, disallowed any limitations on a veteran's ownership interest-including those premised on death or incapacity. See Matter of The Wexford Grp., Int'l, Inc. , SBA No. SDV-105, 2006 WL 4726737, at *6, *9-10 (June 29, 2006).
Even after the Center makes the initial determination that a business qualifies as an SDVOSB, eligibility continues to remain relevant. Verified businesses have an ongoing obligation to maintain their status, and the Center may remove any business which fails to comply with this obligation. See 38 C.F.R. §§ 74.15(b), (e). Generally, a business is entitled to notice and an opportunity to respond before the Center effects removal. See id. § 74.22. The regulations existing in 2017, however, provided for one narrow circumstance under which the VA had to immediately remove a business from VetBiz: upon notice from the SBA that it has found the business ineligible to compete in its system. See id. § 74.2(e) (2017). The regulation provided the Center with no discretion with respect to removal in this scenario. See id.
B.
Ronald Montano, a service-disabled veteran, owns 51% of Veterans Contracting Group, Inc. (VCG). His ownership interest is subject to limitations in the event of his death or incapacity. In 2013, the Center determined that VCG qualified as an SDVOSB under the VA system and added VCG to VetBiz. The Center reaffirmed VCG's status each year until 2017.
On January 5, 2017, VCG learned that it was the lowest bidder on an SDVOSB set-aside contract issued by an agency working with the SBA. The second lowest bidder filed a bid protest challenging VCG's eligibility to compete for the contract. The SBA ultimately determined that, because of the limitations on his ownership interest in the event of his death or incapacity, Mr. Montano did not "unconditionally" own his interest in VCG. As a result, VCG did not qualify as an SDVOSB under the SBA system. The SBA informed the VA of its decision on July 18, 2017. Because VA regulations required the Center to remove any business found ineligible in an SBA proceeding, see 38 C.F.R. § 74.2(e) (2017), the VA removed VCG from VetBiz on July 21, 2017.
Before VCG's removal from VetBiz, the VA had issued solicitations for bids in two SDVOSB set-aside contracts, one for a roof replacement and one for a relocation effort. The application deadline for the roof replacement solicitation was July 28, 2017. The application deadline for the relocation contract was August 2, 2017.[2] Realizing that bidding might close on these solicitations before it finished litigating its status as an SDVOSB, VCG sent the VA a letter on July 26, 2017, expressing its intent to seek a preliminary injunction. Although VCG's letter repeatedly referenced the relocation solicitation, it failed to mention the roof replacement solicitation.[3]
*805 On July 28, 2017, hours before the 9:00 am deadline on the roof replacement solicitation, VCG filed a bid protest in the Court of Federal Claims. VCG did not request a temporary restraining order or injunctive relief in its complaint.
That same day, the contracting officer opened bids for the roof replacement solicitation. The lowest responsive bidder had proposed a cost 30% higher than the government's estimate. VCG had submitted a bid closer to the government's projected cost, but the contracting officer could not consider its bid because VCG was not listed in the VetBiz database on the day bidding closed. See 38 U.S.C. § 8127(e). Given the absence of any reasonable bids, the contracting officer drafted an email on August 1, 2017, recommending cancellation and reposting of the solicitation.
On August 5, 2017, five days after the contracting officer sought cancellation, VCG moved for a preliminary injunction on the roof replacement solicitation. On August 11, 2017, the VA informed the Court of Federal Claims of its intent to cancel the solicitation pursuant to 48 C.F.R. § 14.404-1(c)(6), which permits cancellation when "[a]ll otherwise acceptable bids received are at unreasonable prices." The VA finalized cancellation on August 22, 2017. Hours later, the Court of Federal Claims granted VCG a preliminary injunction restoring it to VetBiz.[4] See Veterans Contracting Grp., Inc., v. United States , 133 Fed.Cl. 613, 624 (2017) ( VCG I ). In its decision, the court specifically declined to address relief related to the roof replacement solicitation "[b]ecause the government has stated that the roofing solicitation is in the process of being cancelled and reissued," thereby rendering VCG's "claim with respect to that solicitation ... moot." Id. at 624 n.11.
The Court of Federal Claims ultimately made the injunction permanent. See Veterans Contracting Grp., Inc., v. United States , 135 Fed.Cl. 610, 619 (2017) ( VCG II ). The court reasoned that, because the SBA and VA regulations had differed at that time on whether contingencies for death or incapacity would disqualify a business from SDVOSB status, the VA had acted arbitrarily and capriciously when it applied 38 C.F.R. § 74.2(e) in a mechanical manner. See id. at 618-19. The court, however, rejected VCG's claim that the contracting officer had acted arbitrarily and capriciously in cancelling the roof replacement solicitation.[5] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 619-20. It noted that the contracting officer had followed normal procurement procedures. Id. at 619. Based on the information available to him at the time, he rationally determined that the government had not received any reasonable bids. Id. Because he could not have known that the Center had improperly removed VCG from VetBiz, the court held that the contracting officer's decision to cancel the solicitation was not arbitrary or capricious. See id. at 619-20.
VCG appeals the denial of its claim that the cancellation of the roof replacement solicitation was arbitrary and capricious. We have jurisdiction under 28 U.S.C. § 1295(a)(3).
II
We review the legal determinations of the Court of Federal Claims de *806 novo and any underlying factual findings for clear error. Palladian Partners, Inc. v. United States , 783 F.3d 1243, 1252 (Fed. Cir. 2015). In a bid protest, we follow Administrative Procedure Act § 706 and set aside agency action "if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. A procurement decision fails under § 706 if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Id. (internal quotation marks omitted) (quoting Savantage Fin. Servs. v. United States , 595 F.3d 1282, 1285-86 (Fed. Cir. 2010) ).
A.
We first address whether the contracting officer's decision to cancel the roof replacement solicitation lacked any rational basis.[6] VCG contends that the VA should have held the solicitation open pending resolution of its suit because it was the lowest bidder. It argues that cancellation was irrational and subverted the government's statutory duty to award contracts to SDVOSBs. In response, the government asserts that the contracting officer rationally cancelled the solicitation based on the compelling reason that he had received no reasonable responsive and responsible bids.
The government has a duty to conduct fair procurements. See Parcel 49C Ltd. P'ship v. United States , 31 F.3d 1147, 1152 (Fed. Cir. 1994). An agency violates this duty "if its consideration of offers is found to be 'arbitrary and capricious toward the bidder-claimant.' " Cent. Ark. Maint., Inc. v. United States , 68 F.3d 1338, 1341 (Fed. Cir. 1995) (quoting Keco Indus., Inc. v. United States , 492 F.2d 1200, 1203 (Ct. Cl. 1974) ). A bidder-claimant carries the burden of demonstrating that an agency acted arbitrarily and capriciously during procurement. See Parcel 49C , 31 F.3d at 1153. To meet this burden, a bidder-claimant generally must show that the procurement decision lacked a "proper legal basis." See id. at 1154.
In Parcel 49C , for example, Parcel 49C met its burden of proof by showing that the government had "no rational basis" for cancelling a solicitation. Id. at 1153. It introduced overwhelming evidence that the rationale offered by the agency for cancellation was "merely a pretext for accommodating FCC's displeasure with the selection of Parcel 49C." Id. at 1151. The record showed that the agency's actual motivation was the hope of avoiding "a move to the less desirable southwest quadrant of Washington, D.C." Id. at 1153. Because the government cannot cancel a solicitation solely to satisfy an agency's whim, we held that the cancellation was arbitrary and capricious. Id. at 1153-54.
Unlike the plaintiff in Parcel 49C , VCG has not shown that the contracting officer lacked any rational basis for cancelling the roof replacement solicitation. First, the record discloses a reasonable motivation for cancellation. While cancellation after bids have been opened is generally disfavored, a solicitation may be cancelled if "there is a compelling reason to reject all bids and cancel the invitation." 48 C.F.R. § 14.404-1(a)(1). A compelling reason may exist when "[a]ll otherwise acceptable bids received are at unreasonable prices." Id. § 14.404-1(c)(6). VCG's bid was *807 not acceptable because VCG was not listed in the VetBiz database when bidding closed. See 38 U.S.C. § 8127(e). The only two acceptable bids proposed costs significantly higher than the government's estimate for the project. Thus, the contracting officer rationally determined that these prices were unreasonable. Under the circumstances, he had a compelling reason to request cancellation.
Second, there is no indication that this reason was a mere pretext to cover an improper motivation. Although VCG alleges that the contracting officer intended to subvert the government's statutory duties to SDVOSBs, it has offered no evidence that the contracting officer knew the Center had wrongfully removed VCG from VetBiz when he requested cancellation of the solicitation. VCG's July 26 letter to the VA only referred to the relocation solicitation and did not mention the roof replacement solicitation. It thus could not provide notice of VCG's intent to seek injunctive relief with respect to roof replacement solicitation. While the act of filing a bid protest on July 28 may have given the contracting officer some indication that VCG disputed its status, VCG's initial complaint requested no form of injunctive relief. VCG only moved for a preliminary injunction on August 5-eight days after bidding on the solicitation had closed and four days after the contracting officer had first requested cancellation. In other words, when the contracting officer requested cancellation, he had no reason to expect the court would impose any limitations on his exercise of discretion. Moreover, because the Court of Federal Claims did not grant VCG's motion until after the solicitation had been fully cancelled, see VCG I , 133 Fed.Cl. at 624, nothing prevented the contracting officer from continuing to pursue cancellation once VCG moved for a preliminary injunction.
We also find it significant that, until the Court of Federal Claims granted judgment on the administrative record on December 15, 2017, the government had not conceded that the Center had acted arbitrarily and capriciously in removing VCG from VetBiz. Instead, it maintained that the Center had acted rationally given applicable regulatory guidelines. See 38 C.F.R. § 74.2(e) (2017). A contracting officer must act in consideration of circumstances as they exist at the time of his decision. See Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc ., 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) (explaining that "[t]he agency must articulate a 'rational connection between the facts found and the choice made ' " (emphasis added) (quoting Burlington Truck Lines v. United States , 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) )). At the time of his decision, the contracting officer was bound by the government's position on this issue and had to presume the Center had acted lawfully. That the Court of Federal Claims determined four months after cancellation that the Center had not acted lawfully thus does not retroactively render his actions irrational.[7]
*808 In sum, we find that the contracting officer had a rational basis to cancel the roof replacement solicitation. See Palladian , 783 F.3d at 1252. We therefore conclude that the contracting officer's decision to cancel the roof replacement solicitation was not arbitrary or capricious.
B.
We next consider whether the contracting officer's decision to open bids on the roof replacement solicitation was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. VCG contends that the VA should never open bids once it receives a pre-award protest because such an action is contrary to procurement policy. VCG has failed to establish, however, that it raised the issue of bid opening before the Court of Federal Claims. It has accordingly waived this challenge on appeal. See Nacchio v. United States , 824 F.3d 1370, 1382 (Fed. Cir. 2016) ("We generally do not consider issues that were not clearly raised in the proceeding below.").
Even if VCG had preserved this argument, we still would find it meritless. VCG did not request injunctive relief until well after bids were opened. Because the contracting officer had no notice of any reason to postpone opening bids for the roof replacement solicitation, his decision to open bids on July 28, 2017, was not arbitrary or capricious.
III
We have considered the parties' remaining arguments and find them unpersuasive. We conclude that the contracting officer's decision to cancel the roof replacement solicitation was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. For these reasons, we affirm the decision of the Court of Federal Claims.
AFFIRMED
No costs.

The VA and SBA recently aligned their regulations regarding unconditional ownership. See Ownership and Control of Service-Disabled Veteran-Owned Small Business Concerns, 83 Fed. Reg. 48,908 (Oct. 1, 2018) (codified at 13 C.F.R. § 125).

The government later extended this deadline because of VCG's bid protest.

Because VCG misspelled the email address of the bid protest division of the Department of Justice, the government disputes receipt of this letter. See Resp. Br. 5.

The preliminary injunction only restored VCG to VetBiz prospectively. Restoration thus did not change VCG's eligibility as of the July 28 application deadline for the roof replacement solicitation.

Following cancellation of the roof replacement solicitation, VCG amended its complaint to challenge that decision.

VCG also argues that the contracting officer violated procurement procedures when he requested cancellation. The only support it offers, however, is that the contracting officer "should never have opened the bids in the first place ." Pet. Br. 14-15 (emphasis in original). Because VCG has waived the bid opening issue on appeal, see infra Part II B., we do not address this challenge.

The dissent contends that accounting for whether the contracting officer knew the Center had unlawfully excluded VCG from the database "effectively limits our review to whether the contracting officer acted in bad faith." Dissent at 809. We disagree. Rather than broadly holding that any agency action "based on an earlier, unlawful act is rational unless the agency official making the decision knew the earlier action was unlawful," Dissent at 809, our decision simply acknowledges that a contracting officer can only act within the scope of his authority and that, here, the contracting officer had no authority to consider VCG's bid. See 38 U.S.C. § 8127(e) (prohibiting the contracting officer from considering bids submitted by businesses not listed on VetBiz); Liberty Ammunition, Inc. v. United States , 835 F.3d 1388, 1401-02 (Fed. Cir. 2016) (noting that "[a] Government agent must have actual authority to bind the Government to a contract" and that a contracting officer "has only that authority actually conferred upon him by statute or regulation" (internal quotation marks omitted) (quoting CACI, Inc. v. Stone , 990 F.2d 1233, 1236 (Fed. Cir. 1993) )). While we can say in hindsight that the "VA would likely have awarded the contract to VCG had it not erroneously removed VCG from the database," see Dissent at 810, it does not change the fact that, at the time the contracting officer cancelled the solicitation, VCG was not listed on VetBiz. It would run contrary to precedent and fairness to find that subsequent, unanticipated circumstances retroactively rendered cancellation irrational when the contracting officer had no authority to consider VCG's bid, let alone award the contract to VCG, at the time he acted.