**AMERICAN TELEPHONE AND TELE-GRAPH COMPANY and Lucent Technologies, Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 93–483 C.**

United States Court of Federal Claims.

Nov. 6, 2000.

C. Stanley Dees, J. Keith Burt, Michael A. Hopkins, Suzette Derrevere, McKenna & Cuneo, L.L.P., Washington, D.C. Thomas R. Suher, Dean L. Grayson, Lucent Technologies, Inc., for plaintiffs.

Bryant G. Snee, with whom were Acting Assistant Attorney General David W. Ogden, Director David M. Cohen, Department of Justice, Washington, D.C., James H. Haag, and Kevin Travis, Office of the General Counsel, Space and Naval Warfare Systems Command, Department of the Navy, for defendant.

## OPINION

WIESE, Judge.

### INTRODUCTION

At an earlier stage in this lawsuit, this court issued an opinion holding that American Telephone & Telegraph Company's (AT & T) fixed-price incentive-type contract with the Navy was void *ab initio* and that, in its place, AT & T was entitled to be paid for its contract efforts on an *quantum meruit* basis pursuant to an implied-in-fact contract. *American Tel. & Tel. Co. v. United States*, 32 Fed.Cl. 672 (1995).[1]

The basis for this ruling was the Navy's failure to comply with a statute—Section 8118 of the Defense Appropriations Act of 1987, Pub.L. No. 100–202, 101 Stat. 1329–84 (1987)—that prohibited the Department of Defense from either obligating or expending appropriated funds on fixed-price contracts involving the acquisition of major systems or sub-systems in excess of $10 million, absent a determination in writing that "program risk has been reduced to the extent that realistic pricing can occur, and that the contract type permits an equitable and sensible allocation of program risk between the contracting parties." Although the contract that the Navy awarded to AT & T in 1987 came within the scope of Section 8118—a fixed-price incentive fee contract in the initial amount of $19.2 million involving research, development, and production of a ship-towed undersea radar system—the determination required by the statute was never made. Accordingly, this court concluded that AT & T's contract was contrary to law and therefore void.

The ruling was reversed on appeal. In an en banc decision entered pursuant to an interlocutory appeal, the Federal Circuit ruled that courts should refrain from invalidating government contracts, particularly where those contracts have been fully performed, unless that outcome is expressly required by the statute or regulation that the contract contravenes or is warranted on the basis of the offended law's legislative history. In this case, the court of appeals concluded that "[b]oth the DoD administration of § 8118, and the congressional response to this administration, make clear that Congress did not intend that this enactment would terminate fully performed contracts because of this flawed compliance." 177 F.3d 1368, 1375 (1999). Pursuant to this ruling, the case was remanded to this court for further proceedings.

### BACKGROUND

In the contract at issue, AT & T agreed to research, develop and produce the sonar component of a ship-towed undersea surveillance system, formally called the Reduced Diameter Array Subsystem (the RDA Subsystem), for the fixed-price of $19 million. In the performance of this work, however, AT & T incurred costs far in excess of the

---

1. As originally filed, the complaint in this action named only AT & T as the plaintiff. Lucent Technologies, Inc., formerly a wholly-owned subsidiary of AT & T, became a co-plaintiff in November 1999.

adjusted amount of its contract ceiling price. After unsuccessfully seeking the recovery of these additional costs at the administrative level, AT & T brought suit in this court.

In the complaint that it initially presented here, AT & T sought recovery under two counts. Count I asserted a right to contract reformation, *i.e.,* conversion of the contract to a cost-reimbursement undertaking, based on the contention that Section 8118, as well as certain procurement regulations and directives, precluded award of the RDA contract as a fixed-price development contract. Count I also advanced the argument that the RDA contract was void for illegality and that AT & T was therefore entitled to recover under *quantum meruit.* Count II added the argument that reformation was appropriate because the RDA contract resulted from a mutual mistake.

Following the return of the case to this court, AT & T, now joined by Lucent Technologies, Inc., moved to amend the complaint to add new theories of recovery. In the amended complaint, plaintiffs essentially restate the original grounds for relief—illegality and mutual mistake (now Counts I and V respectively)—and add four additional counts. The additional counts allege that the government fraudulently induced the contract (Count II), that the government breached the contract (Count III), that there was a failure of consideration (Count IV), and that the government wrongfully took plaintiffs' property, without compensation, in violation of the Fifth Amendment to the United States Constitution (Count VI).

The government now moves for dismissal of all counts of the amended complaint. We are urged to dismiss Counts II through IV (fraud in the inducement, breach of contract, failure of consideration) and Court VI (taking), for lack of subject matter jurisdiction, and Count II (fraud in the inducement) for failure to plead fraud with the particularity required under RCFC 9(b). In the alternative, defendant contends that all counts *should be dismissed for* failure to state a claim upon which relief can be granted. Plaintiffs oppose dismissal and ask that we set the matter for trial on the merits.

On the basis of the parties' briefs and the oral argument that was heard on October 25, 2000, the court now concludes that the amended complaint should be dismissed for failure to state a claim upon which relief can be granted.

## DISCUSSION

We begin our discussion with the government's contention that the additional grounds for relief that plaintiffs introduced in the amended complaint represent claims not previously submitted to the contracting officer and therefore are claims that may not now be heard by this court. We do not accept this argument.

 To be sure, the government is correct on its basic point: under the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1994 & Supp. IV 1998), a contracting officer's decision on a claim is a prerequisite to this court's later exercise of jurisdiction over the same claim. *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 645 F.2d 966, 971 (1981). The problem with the government's argument, however, rests in its assertion that plaintiffs' additional grounds for relief are new claims, that is, claims not previously considered by the contracting officer and therefore not now assertable here. We do not agree with this contention. Modern procedural law defines a claim as "an aggregate of facts which in various combinations, all comprising a common core or nucleus of the facts, may support a number of substantive legal theories with corresponding remedies." Restatement (Second) of Judgments § 24 cmt. c (1982). The same definition applies to claims arising under the Contract Disputes Act. *See Placeway Constr. Corp. v. United States,* 920 F.2d 903, 907 (Fed.Cir.1990) (recognizing that claims are distinct "if the claims as presented to the [contracting officer] will necessitate a focus on a different or unrelated set of operative facts as to each claim"). The application of this standard dictates rejection of the government's argument.

Both the claims that AT & T initially submitted to the contracting officer and the additional grounds for relief raised in the amended complaint turn on the same opera-

tive facts: the allegation that the award to AT & T of a fixed-price contract without assessment of the developmental risks inherent in the contract project violated Section 8118 as well as particular procurement regulations and directives. Thus, from AT & T's point of view, the new counts simply add new theories of recovery rather than new factual bases for recovery.

The government argues that plaintiffs cannot establish, under any form of analysis, that the new counts arise out of the same set of facts as relied upon in the original claim. Therefore, says the government, we should endorse the idea that plaintiffs are, in fact, asserting new claims. Again, we do not accept this contention. The dimensions of a claim are gauged by the facts that are invoked in support of it, not by the sufficiency of those facts to support the relief being claimed.

Plaintiffs do not tie their theories of recovery to any contract negotiations or to any contract terms. Rather, as we have said, they stake their case entirely on the proposition that the Navy violated the law by awarding the RDA contract on a fixed-price basis without first considering the level of technical risk inherent in the work to be performed. It is this omission which plaintiffs say the law treats as an actionable wrong under the various legal theories they have invoked. The remedy they seek is the recovery of their uncompensated performance costs (plus a reasonable profit thereon), through various alternative approaches: reformation of the RDA contract to a cost-reimbursable undertaking; cancellation of the RDA contract and substitution of an implied contract, or, rescision of the RDA contract accompanied by restitution. Based on the foregoing, we conclude that plaintiffs are not asserting new claims.

■ We turn now to the merits. The core proposition upon which plaintiffs rest their case is the contention that a contract that violates the law, but that is not rendered void *ab initio* on account of that violation, will support a remedy in the contractor's favor, *i.e.*, a contract price adjustment. Two cases cited in support of this contention are *New England Tank Indus. v. United States*, 861

F.2d 685 (Fed.Cir.1988) and *Beta Systems Inc. v. United States*, 838 F.2d 1179 (Fed.Cir. 1988). However, we do not draw from these authorities a rule as broad as the one plaintiffs now urge. To the contrary, the legal principle these cases adopt is that it is only those price terms that disregard the dictates of a mandatory regulation or statute that can support the remedy of reformation.

In *New England Tank*, for example, the government, in exercising a contract renewal option, had impermissibly disregarded a funding limitation in order to retain the benefits of the option contract's below market price. The question whether the contractor could be relieved of this onerous pricing commitment turned on whether the funding limitation that the government had ignored was "a mandatory or binding regulation." 861 F.2d at 694. "Legal rights" the court noted, "flow from mandatory, not directory, requirements." *Id.* (citing *Nordstrom v. United States*, 169 Ct.Cl. 632, 342 F.2d 55, 59 (1965)). In other words, the contractor could not invoke the violation of the funding restriction as a basis for relief unless the government itself was without authority to disregard it.

The same reasoning is seen in *Beta Systems*. The contract in that case contained an economic price adjustment clause whose statistical index failed to approximate the changes in the contractor's material costs. In addressing the contractor's request for reformation based on mutual mistake, the court noted that Beta did not intend to use an index that failed to give fair weighting to its material costs, and the government, in turn, was presumed (as a matter of law) not to intend the use of an index that violated procurement regulations. On this basis the court ruled: "If the contract is in violation of the [Defense Acquisition Regulations] ... then reformation is appropriate." 838 F.2d at 1186. Again, the touchstone for reformation was the transgression of a mandatory regulation.

Neither of these cases offers plaintiffs any support. Indeed, the very narrowness of their holdings—that only those price terms that harbor a violation of law can support reformation—renders them inapplicable to our situation. We are not concerned in this

case with a statute that proscribes the use of a fixed-price contract. Rather, Section 8118, and the government's failure to abide by it, was identified in the en banc decision simply as "governmental non-compliance with internal review and reporting procedures." 177 F.3d at 1376. Thus, the government's omission was simply a failure to abide by housekeeping rules. And from the disregard of such rules, no actionable claim can arise. *Cessna Aircraft Co. v. Dalton,* 126 F.3d 1442, 1451–52, 1454–55 (Fed.Cir.1997) *cert. denied,* 525 U.S. 818, 119 S.Ct. 57, 142 L.Ed.2d 44 (1998) (recognizing that contractor has no enforceable interest in contract procedures and contract clauses intended primarily for government's benefit).

Plaintiffs insist, however, that the Federal Circuit found Section 8118 to have been enacted for the benefit of prospective contractors, thus vesting them, as members of that community, with a right to seek redress for any injury resulting from the statute's violation. Indeed, plaintiffs say that it was the Federal Circuit's "unwillingness" to find the RDA contract void *ab initio* that most clearly supports the availability of a remedy in this court.

We do not agree. The question the court of appeals was asked to resolve was whether the Navy's failure to comply with Section 8118 rendered the RDA contract void from the start, not whether AT & T retained a right to challenge the contract despite a ruling as to its enforceability. To answer the question presented, the court of appeals looked to legislative history because the statute itself was silent about the outcome in the event of non-compliance.

Following a review of the legislative history, the court concluded that it is "clear that Congress did not intend that this enactment [Section 8118] would terminate fully performed contracts because of this flawed compliance." 177 F.3d at 1375. The court came to this conclusion because it saw Section 8118 as an internal review and reporting procedure intended for the government's benefit. Particularly instructive to the court was the legislative history's admonition that "this section [8118] *not be used as the basis for litigating the propriety of an otherwise valid*

*contract.*" 177 F.3d at 1375 (citing S.Rep. No. 100–326, 100th Cong., 2d Sess. at 105 (May 4, 1998)). Regarding this expression of legislative purpose, the appellate court observed: "This explicit statement of intent weighs heavily against judicial invalidation of 'an otherwise valid contract,' for the clearly stated congressional purpose is contrary." 177 F.3d at 1375.

The same reasoning that led the court of appeals to reject the argument that the RDA contract was void from the start now leads us to say that the contract is enforceable as it stands. Faithfulness to the legislative purpose underlying Section 8118 demands this result: non-compliance with the statute is not an actionable wrong. To say it another way, plaintiffs cannot claim a protectable interest in the proper application of Section 8118 for Congress intended to give them none. "[I]f the primary intended beneficiary of a statute or regulation is the government, then a private party cannot complain about the government's failure to comply with the statute or regulation, even if that party derives some incidental benefit from compliance with it." *Cessna Aircraft,* 126 F.3d at 1451–52.

■ In addition to claiming that award of the RDA contract on a fixed-price basis was a violation of Section 8118, plaintiffs make a similar claim based on various procurement regulations and directives. Included in this list of referenced regulations are Federal Acquisition Regulations § 16.104 and § 35.006 (48 C.F.R. § 16.104 and § 35.006 (1987)), Defense Federal Acquisition Regulations § 216.101 and § 216.104 (48 C.F.R. § 216.101 and § 216.104 (1987)), and Department of Defense Directive 5000.1 (September 1, 1987).

We have examined these sources but can find in them no support for the position claimed: they announce no obligatory rules of government procurement. They are, instead, instructional materials, directed to contracting officers and other procurement-responsible personnel, that offer guidance on the use and selection of contract types. Although these materials do caution against the use of fixed-price contracts where developmental effort is involved, *see, e.g.,* 48 C.F.R.

§ 216.104 (1987) and 48 C.F.R. § 35.006(c) (1987), we cannot go the extra step of saying that the adoption of such a contract in that setting would be a violation of law. Clearly, that is not the case. The regulations make clear that "selection of the appropriate contract type is, in the final analysis, the responsibility of the contracting officer." 48 C.F.R. § 216.104(1) (1987).

But even if one could read these regulations as placing some limits upon a contracting officer's exercise of discretion in the selection of contract type, the time to have raised such concerns was when the RDA contract was being negotiated, not years after its completion. In fact, the very regulations that plaintiffs rely on point out that contract type and contract price go hand-in-hand. "Negotiating the contract type and negotiating prices are closely related and should be considered together." 48 C.F.R. § 16.103(a) (1987). Surely, as a sophisticated government contractor knowledgeable in the regulations that guide the government in the formation of its contracts, AT & T must have been aware of this regulation and the opportunity it presented to influence the ultimate choice of contract type. However, so far as we can tell from this record, AT & T never questioned the contracting officer's decision to use a fixed-price incentive-fee contract for the RDA procurement.[2] Now it is too late to do so. *Whittaker Electronic Sys. v. Dalton,* 124 F.3d 1443, 1446 (Fed.Cir.1997) (holding that contractor's failure to object in a timely fashion to the inclusion of an option clause "prior to execution, or even prior to litigation," resulted in waiver of a right to challenge such inclusion at a later date).

## CONCLUSION

The several theories of recovery that plaintiffs have raised in this remand proceeding are founded on the premise (i) that the Navy was required by Section 8118, as well as by various procurement regulations and directives, to award the RDA contract on a cost-reimbursement basis, and (ii) that plaintiffs, as the intended, but thwarted, beneficiaries of these laws, may now seek their enforcement through a variety of legal remedies—reformation, implied contract recovery, rescision and restitution—all directed towards a repricing of the work performed under the RDA contract.

Because we have concluded that plaintiffs have no enforceable interest in Section 8118 or in the procurement regulations and directives on which they also rely, we direct the dismissal of their amended complaint for failure to state a claim on which relief can be granted.

---

2. We would note in passing that, under the regulations, a fixed-price incentive-fee contract is suggested for use in those situations where the absence of precise specifications generates difficulties in estimating costs with accuracy. The regulation, 48 C.F.R. § 35.006(c) (1987), states as follows:

> (c) Because the absence of precise specifications and difficulties in estimating costs with accuracy (resulting in a lack of confidence in cost estimates) normally precludes using fixed-price contracting for R & D, the use of cost-reimbursement contracts is usually appropriate .... The nature of development work often requires a cost-reimbursement completion arrangement .... When the use of cost and performance incentives is desirable and practicable, fixed-price incentive and cost-plus-incentive-fee contracts should be considered in that order of preference.