NORTHROP GRUMMAN CORPO-
RATION, Military Aircraft Di-
vision, Plaintiff,

v.

UNITED STATES, Defendant.

No. 96–760C.

United States Court of Federal Claims.

Nov. 5, 2004.

Joseph F. Coyne, Jr., Sheppard, Mullin, Richter & Hampton LLP, Los Angeles, CA, for the plaintiff. Jeffrey N. Eisenstein, Richard B. Clifford, Jr., Allen Cannon, III, Perkins Coie LLP, Washington, D.C.; Joseph O. Costello, Northrop Grumman Corporation, Los Angeles, CA, of counsel.

Deborah A. Bynum, Assistant Director; Martin F. Hockey, Jr., Senior Trial Counsel; David M. Cohen, Director, Commercial Litigation Branch, Civil Litigation Division, United States Department of Justice, Washington, D.C., for the defendant. Lt. Colonel Christopher Matthews and Michael J. O'Farrell, Jr., Department of the Air Force, Washington, D.C., of counsel.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

In a series of separate motions in this case, defendant also has filed a motion to dismiss Counts I, III, IV, VI and VII of the plaintiff's fourteen-count, second amended complaint, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). Defendant awarded plaintiff Northrop Grumman Corporation an incrementally funded, fixed-price contract (Contract No. F33657–86–3001), for the full-

scale development and initial production of the Tri–Service Stand–Off Attack Missile (TSSAM), a cruise missile designed for use by the Air Force, Navy and Army. TSSAM was a fixed-price contract. Plaintiff states in its amended complaint that it objected to the fixed-price type of contract, and recommended instead to the government a cost-reimbursement type of contract, due to the plaintiff's belief that the performance risks were unpredictable. The TSSAM contract subsequently was terminated for the convenience of the government. Plaintiff submitted a certified claim to the contracting officer, claiming a violation of Department of Defense (DOD) Appropriations Act, Pub.L. No. 100–202, § 8118, 101 Stat. 1329, 1329–84 (1987) (hereafter, section 8118), and a violation of various procurement regulations and directives. The contracting officer's final decision denied plaintiff's claims. Plaintiff has filed these section 8118–type claims, as well as other claims which were denied by the contracting officer, in a second amended complaint with the Court of Federal Claims.

On December 23, 1987, the United States Congress enacted the Department of Defense Appropriations Act for FY 1988, including section 8118, which provided that high-value, research and development contracts be limited to the cost-reimbursement form of contract, unless the Under Secretary of Defense for Acquisition executes a written determination that program risks had been reduced to the extent that realistic pricing could occur and the risks could be equitably allocated between the parties to the contract. The statute provides:

> SEC. 8118 None of the funds provided for the Department of Defense in this Act may be obligated or expended for fixed price-type contracts in excess of $10,000,000 for the development of a major system or subsystem unless the Under Secretary of Defense for Acquisition determines, in writing, that program risk has been reduced to the extent that realistic pricing

can occur, and that the contract type permits an equitable and sensible allocation of program risk between the contracting parties: *Provided,* That the Under Secretary may not delegate this authority to any persons who hold a position in the Office of the Secretary of Defense below the level of Assistant Secretary of Defense: *Provided further,* That the Under Secretary report to the Committees on Appropriations of the Senate and House of Representatives in writing, on a quarterly basis, the contracts which have obligated funds under such a fixed price-type developmental contract.

DOD Appropriations Act, Pub.L. No. 100–202, § 8118, 101 Stat. 1329, 1329–84 (1987). The plaintiff's second amended complaint states that, on or about January 6, 1988, the defendant obligated approximately $49.9 million in research and development funds, which had been appropriated under the FY 1988 DOD Appropriations Act, to the TSSAM contract.[1]

The plaintiff's second amended complaint further alleges that:

> 93. Defendant at no time conducted the program risk reviews for the TSSAM Contract required by Section 8118, its successor provisions, its implementing regulations, DOD Directive 5000.1, and DOD Instruction 5000.2.

> 94. Defendant at no time sought or obtained USD(A) [Under Secretary of Defense for Acquisition] approval to continue the TSSAM Contract on a fixed-price basis as required by Section 8118, its successor provisions, its implementing regulations, and DOD direction and policy.

The plaintiff's second amended complaint contends that, because of cost growth on the TSSAM contract, plaintiff proposed that the TSSAM procurement be restructured to a cost-reimbursable form of contract. Although the TSSAM contract did undergo modifications, it remained a fixed-price con-

---

1. The parties note that Defense Appropriations Act provisions essentially identical to section 8118 were enacted each year after the FY 1988 Defense Appropriations Act, through FY 1993. Congress apparently abandoned the inclusion of a section 8118–type provision in subsequent De-

fense Appropriations Acts. *See, e.g.,* DOD Appropriations Act for FY 1994, Pub.L. No. 103–139, 107 Stat. 1418–1484 (1993); DOD Appropriations Act for FY 1995, Pub.L. No. 103–335, 108 Stat. 2599–2660 (1994).

tract. Contract modification P00099 increased the TSSAM contract's ceiling price, eliminated the options for the first four production lots, and established revised performance and schedule requirements, among other changes, but did not convert the contract to a cost-reimbursement form. Contract modification P00150 extended the schedule for completing the full-scale development of the TSSAM, but did not convert the contract to a cost-reimbursement form. Five counts of the plaintiff's second amended complaint address the section 8118 and related issues (counts I, III, IV, VI and VII).

(1) Count I ("Violation of Regulations and Directives regarding Contract Type") states that the use of a fixed-price contract for the TSSAM contract violated DOD Directive 5000.1, Federal Acquisition Regulation (FAR) 16.103(b), 16.104 and 35.006(c), and Defense Federal Acquisition Regulation Supplement (DFARS) 216.104, regulations and directives which allegedly precluded use of the fixed-price contract form for the TSSAM under the particular facts of this case. Plaintiff seeks reformation of the TSSAM contract from a fixed-price contract to a cost-reimbursable contract based on the alleged failure to comply with the above named regulations and directives, or, in the alternative, damages (uncompensated incurred costs plus a reasonable profit) under an implied-in-fact contract theory, because of the defendant's improper choice of a fixed-price form of contract.

(2) Count III ("Reformation of Contract by Use of Cost–Reimbursement Funds") states that the defendant's failure to make the program risk assessment required by section 8118 thereby limited the use of funding to a cost-reimbursement contract, such that the TSSAM contract was "converted . . . to a cost-reimbursement undertaking." Plaintiff seeks reformation of the pricing terms of the TSSAM contract to reflect the "cost-reimbursable undertaking," and uncompensated incurred costs plus a reasonable profit.

(3) Count IV ("Obligation of Funds in Violation of Law") states that the Under Secretary of Defense for Acquisition did not make the risk assessment required by section 8118, and could not have made a risk assessment which would have justified use of a fixed-price contract, because program risks were too high. Count IV alleges that the pricing terms in the TSSAM contract were converted to cost-reimbursement pricing terms, or should be reformed to cost-reimbursement pricing terms, or plaintiff should recover under an implied-in-fact contract.

(4) Count VI ("Contract Modification in Violation of Law") states that P00099 was an out-of-scope change, valued at over $25 million, which constituted a major system requiring a section 8118 risk assessment of its own, independent of the basic TSSAM contract. Plaintiff seeks reformation of P00099 to a cost-reimbursement form of contract.

(5) Count VII ("Contract Modification in Violation of Regulations and Directives") states that P00099 so fundamentally modified the TSSAM contract that defendant was required to review the continued use of a fixed-price contract form and, further, that the continuation of the fixed-price contract form for P00099 violated DOD Directive 5000.1, Secretary of the Navy Instruction 4210.6A, FAR 16.103, 16.104, and DFARS 235.006 and 216.104. Plaintiff seeks reformation to a cost-reimbursement contract, or, in the alternative, recovery under an implied-in-fact contract.

Defendant moves to dismiss all five counts and relies heavily on the decision of the United States Court of Appeals for the Federal Circuit in *American Telephone and Telegraph Company v. United States*, 307 F.3d 1374 (Fed.Cir.2002).[2]

## DISCUSSION

The United States moves to dismiss Counts I, III, IV, VI and VII of the plaintiff's second amended complaint, under Rule

---

**2.** The direct history of the *AT & T* case includes the following opinions: *American Tel. & Tel. Co. v. United States (AT & T I)*, 32 Fed.Cl. 672 (1995); *aff'd in part, rev'd in part, AT & T II*, 124 F.3d 1471 (Fed.Cir.1997); *reh'g en banc, AT & T III*, 177 F.3d 1368 (Fed.Cir.1999); *on remand, AT & T IV*, 48 Fed.Cl. 156 (2000); *aff'd, AT & T V*, 307 F.3d 1374 (Fed.Cir.2002), *cert. denied*, 540 U.S. 937, 124 S.Ct. 56, 157 L.Ed.2d 249 (2003).

12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), for failure to state a claim upon which relief can be granted. A court may dismiss plaintiff's claims for failure to state a claim when no additional proceedings would enable the plaintiff to prove facts entitling him or her to prevail. *New York Life Ins. Co. v. United States*, 190 F.3d 1372, 1377 (Fed.Cir.1999); *Constant v. United States*, 929 F.2d 654, 657 (Fed.Cir.) ("Nor is due process violated by a dismissal, even *sua sponte*, for failure to state a claim.... [N]o additional proceedings could have enabled Constant to prove any set of facts entitling him to prevail on his claim for relief."), *cert. denied*, 501 U.S. 1206, 111 S.Ct. 2799, 115 L.Ed.2d 973 (1991); *see also Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 793–94 (Fed.Cir. 2000) (the particular facts of the case did not support a *sua sponte* dismissal for failure to state a claim). The court should dismiss a case for failure to state a claim only if "it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir.2000); *New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (1997); *Consolidated Edison Co. v. O'Leary*, 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied*, 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *Gould, Inc. v. United States*, 67 F.3d 925, 929–30 (Fed.Cir.1995); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied*, 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion [to dismiss] must be denied.'"); *RCS Enterps., Inc. v. United States*, 46 Fed.Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1), as well as Federal Rules of Civil Procedure 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim").

When deciding on a motion to dismiss based on failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. 99; *Boyle v. United States*, 200 F.3d at 1372; *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998); *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir. 1995); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d at 1167 (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Hamlet v. United States*, 873 F.2d at 1416; *Ho v. U.S.*, 49 Fed.Cl. 96, 100 (2001), *aff'd*, 30 Fed. Appx. 964 (2002); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996) (table). If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988); *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404–05 (1994).

"A motion to dismiss under Rule [12(b)(6)] for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States,* 156 F.3d at 1370.

■ The key decision on which the defendant's motion to dismiss is based is *AT & T V,* in which section 8118 and related procurement regulations and directives also were at issue. Contractor AT & T was awarded a fixed-price contract by the Navy to produce a submarine tracking device. *AT & T V,* 307 F.3d at 1376. The contract's adjusted final price was approximately $34.5 million, but AT & T spent over $91 million on the procurement. *Id.* at 1377. Section 8118 was applicable to the contract. A fixed-price contract was awarded to AT & T even though the Under Secretary of Defense for Acquisition did not execute a written determination that the program risk assessment permitted the fixed-price form of contract. *Id.* As noted in *AT & T V,* the Court of Federal Claims, in *AT & T IV,* 48 Fed.Cl. 156, had held that "non-compliance with [section 8118] is not an actionable wrong.... [P]laintiffs cannot claim a protectable interest in the proper application of Section 8118 for Congress intended to give them none." *AT & T V,* 307 F.3d at 1377 (quoting *AT & T IV,* 48 Fed.Cl. at 160). The Court of Federal Claims also addressed procurement regulations and directives, and found that the contracting officer had discretion to use a fixed-price form of contract for the submarine tracking device. *Id.* The Federal Circuit agreed with the lower court, and affirmed the dismissal of AT & T's complaint for failure to state a claim upon which relief could be granted. *Id.* at 1380, 1381.

In *AT & T V,* the Federal Circuit concluded that:

> This court must again consult the meaning of section 8118. *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 626, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) ("[Courts] have no authority to substitute [their] views for those expressed by Congress in a duly enacted statute."). The language of section 8118 does not explicitly create a cause of action for enforcement of its expenditure prohibitions. Instead the only explicit provision with enforcement consequences in section 8118 requires quarterly reports to the "Committees on Appropriations of the Senate and the House of Representatives in writing." Thus, section 8118 envisions enforcement, if any, through legislative procedures. The language permits the appropriate legislative committees to monitor compliance and, presumably, guarantee enforcement in the form of future reductions in, or limitations on, appropriated funds. Indeed, appropriation bills often contain this kind of oversight provision that permits the appropriation committees to properly monitor federal spending programs. Department of Defense Appropriations Act, 2000, Pub.L. No. 106–79, § 8075, 113 Stat. 1212, 1246–47 (1999) ("[T]he Secretary of Defense may issue loan guarantees in support of United States defense exports ... [p]rovided ... [t]hat the Secretary shall provide quarterly reports to the Committee on Appropriations."); Department of Defense Appropriations Act, 1999, Pub.L. No. 105–262, § 8075, 112 Stat. 2279, 2314 (1998); *see also* Departments of Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act, 1999, Pub.L. No. 105–276, § 414, 112 Stat. 2461, 2509 (1998) ("None of the funds ... shall be used to enter into any new lease ... unless the Secretary submits, in writing, a report to the Committee on Appropriations of the Congress."). Based on that oversight, the committees and Congress can then adjust the spending allotments in future bills to ensure compliance with legislative objectives. Thus section 8118 is an appropriations oversight provision that envisions enforcement, if any, in the form of legislative spending adjustments in future bills. Section 8118 does not make any provision for judicial enforcement.

*AT & T V,* 307 F.3d at 1377–78 (alterations in original). The Federal Circuit cited a Senate Armed Services Committee Report which "stated expressly that noncompliance with

section 8118 should not be 'the basis for litigating the propriety of an otherwise valid contract....'" *Id.* at 1378 (citing S.Rep. No. 100–326, 100th Cong., 2d Sess. at 105 (1988) and *AT & T III,* 177 F.3d at 1375). The Federal Circuit ruled that section 8118 "does not create a cause of action inviting private parties to enforce the provision in courts.... Section 8118 simply does not provide implicitly or explicitly for any enforcement of its supervisory and congressional oversight provisions in a judicial forum." *Id.* at 1379.

█ Contractor AT & T also had alleged that the Navy violated various procurement regulations and directives that address the contracting officer's selection of contract type, specifically citing 48 C.F.R. §§ 16.104, 35.006, 216.101 and 216.104 (1987), and DOD Directive 5000.1 (Sept. 1, 1987). *Id.* at 1379.[3] The Federal Circuit in *AT & T V* found, however, that these various regulations and directives only cautioned against use of a fixed-price contract where developmental risk makes cost estimation difficult, but did not prohibit use of the fixed-price form of contract by contracting officers. *Id.* at 1379–80. The conclusion of the Federal Circuit's reading of these regulations and directives was that the contracting officer is granted the discretion to select the contract type. *Id.* at 1379. The Federal Circuit also noted that contracting officers are afforded great discretion in negotiated procurements, which was the type of procurement in *AT & T,* as well as in the present case. *Id.* (citing *LaBarge Prods. v. West,* 46 F.3d 1547, 1555 (Fed.Cir. 1995) and *Burroughs Corp. v. United States,* 223 Ct.Cl. 53, 65, 617 F.2d 590, 597–98 (1980)); *see also Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1312, 1323 (Fed.Cir.), *reh'g and reh'g en banc denied* (2003); *Bannum, Inc. v. United States,* 60 Fed.Cl. 718, 723 (2004).

Equally important, the Federal Circuit in *AT & T V* also concluded that, even if the contracting officer had abused his discretion by using a fixed-price contract, an issue not reached by the trial court, "[t]hese cautionary and informative regulations and directives provide only internal governmental direction. Like section 8118, these provisions supply no remedy for private parties in a judicial forum." *Id.* at 1380. The court in *AT & T V* quoted *E. Walters & Co. v. United States:* "[T]he fact that a procurement practice is prohibited does not necessarily mean that it is therefore actionable. The discipline to be administered in such cases is a responsibility of the cognizant procurement officials within the agency ... [and not] by this court...." *E. Walters & Co. v. United States,* 217 Ct.Cl. 254, 263–64, 576 F.2d 362, 367 (1978).

As noted above, plaintiff, in the present case, alleges a violation of section 8118 in counts III, IV and VI of its second amended complaint, with counts III and IV focused on the TSSAM contract, and count VI focused on modification P00099. Counts I and VII of the second amended complaint allege a violation of procurement regulations and directives, with count I focused on the TSSAM contract and count VII focused on modification P00099.

Plaintiff argues that "this broad holding [in *AT & T V*] is in error ...." Plaintiff elaborates its view, as follows:

> no prior case has ever held that a contractor cannot recover traditional contract remedies based on the Government's violation of a statute relating to material contract terms simply because the statute itself does not contain an express right of action. By holding that *all* contractors are

---

**3.** Northrop Grumman included in its complaint in this court the same procurement regulations and directives addressed by the Federal Circuit in *AT & T V* and, in addition, in count VI of its second amended complaint, included Secretary of the Navy Instruction (SECNAVINST) 4210.6A, which was not raised in *AT & T.* SECNAVINST 4210.6A, titled "Acquisition Policy," dated April 13, 1988, cites section 8118 as its first reference; summarizes section 8118 in paragraph 5c of the Navy Instruction; and indicates adherence to FAR Part 35 in paragraph 5b of the Navy In-

struction, which was raised by AT & T, *see AT & T V,* 307 F.3d at 1379 (addressing FAR 35.006); *see also Northrop Grumman Corp. v. United States,* 47 Fed.Cl. 20, 49–50 (2000) (discussing SECNAVINST 4210.6A). The court concludes that SECNAVINST 4210.6A was similar to the procurement regulations and directives raised by AT & T, such that the Federal Circuit's conclusions on the cited regulations/directives apply with equal force to the Navy Instruction. *See AT & T V,* 307 F.3d at 1379–80.

deprived of *all* remedies in such cases, *AT & T* sharply conflicts with an unbroken line of precedent dating back more than one hundred years—including many decisions from the Federal Circuit itself—in which the courts granted relief to government contractors aggrieved by illegal contract terms regardless of whether the violated statutes contained private rights of action.

(emphasis in original). Although plaintiff argues that the *AT & T V* decision is in error, the decisions of the United States Court of Appeals for the Federal Circuit are binding precedent on this court. In addition, the cases cited by plaintiff are distinguishable. Plaintiff cites the opinion of the United States Court of Appeals for the Federal Circuit in *Gould, Inc. v. United States* (*Gould IV*), 67 F.3d 925 (Fed.Cir.1995),[4] in support of its attempt to find precedent contrary to *AT & T V*. In *Gould IV*, 67 F.3d at 927, the Navy awarded claimant a fixed-price contract to produce a certain type of radio. In *Gould IV*, the claimant sought cost overruns on its fixed-price contract, alleging that the government had violated a federal statute, 10 U.S.C. § 2306(h)(1)(D) (1982), which required the government to supply a "stable design" for multiyear procurement contracts. *Gould IV*, 67 F.3d at 927. Gould's amended complaint had alleged the existence of an express or implied-in-fact contract, breached by the government's alleged failure to comply with 10 U.S.C. § 2306(h)(1)(D). *Id.* at 929–30. The Federal Circuit found that Gould had stated a claim upon which relief could be granted, and remanded the case for trial. *Id.* at 929–31. The Federal Circuit in *Gould IV*, however, was dealing not with section 8118, but with 10 U.S.C. § 2306(h), and did not address the issue of whether or not the language of 10 U.S.C. § 2306(h) created a private cause of action for enforcement of its provisions. As discussed above, the language and legislative history of section 8118 led the Federal Circuit in *AT & T V* to conclude that "section 8118 envisions enforcement, if any, through legislative procedures." *AT & T V*, 307 F.3d at 1377. Moreover, the Federal Circuit in *Gould IV* did not address the language[5] or the legislative history[6] of multiyear contracting with respect to whether or not Congress intended to create a basis for contractor claims against the government, although Congress provided for certain congressional oversight and for cancellation or termination costs for contractors. *See* 10 U.S.C. §§ 2306(h)(2)(B), (3), (5), (8) (1982). *Gould IV* does not provide support to the plaintiff in the present case. *Gould IV* did not address section 8118, and did not address the controlling issue in *AT & T V*, whether Congress intended to create a private cause of action for enforcement of a statute's prohibitions, or intended for enforcement to be through legis-

---

**4.** The history of the *Gould* case includes: *Gould, Inc. v. United States* (*Gould I*), 19 Cl.Ct. 257 (1990); *judgment vacated, Gould II*, 935 F.2d 1271 (Fed.Cir.1991); *on remand, Gould III*, 29 Fed.Cl. 758 (1993); *judgment vacated, Gould IV*, 67 F.3d 925 (Fed.Cir.1995).

**5.** The multiyear procurement statute at issue in *Gould IV* provided that:

(1) To the extent that funds are otherwise available for obligation, the head of an agency may make multiyear contracts (other than contracts described in paragraph (6)) for the purchase of property, including weapon systems and items and services associated with weapon systems (or the logistics support thereof), whenever he finds—... (D) that there is a stable design for the property to be acquired and that the technical risks associated with such property are not excessive ....

\*　\*　\*　\*　\*　\*

(3) Before any contract described in paragraph (1) that contains a clause setting forth a cancellation ceiling in excess of $100,000,000 may be awarded, the head of the agency concerned shall give written notification of the proposed contract and of the proposed cancellation ceiling for that contract to the Committees on Armed Services and on Appropriations of the Senate and House of Representatives, and such contract may not then be awarded until the end of a period of 30 days beginning on the date of such notification.

10 U.S.C. § 2306(h)(1), (3) (1982) (cited in *Gould IV*, 67 F.3d at 927 nn. 2–3, 929).

**6.** Pub.L. 97–86, Title IX, § 909(b)(2) (Dec. 1, 1981) added subsection (h) on multiyear contracting to 10 U.S.C. § 2306 (1982). Multiyear contracting was introduced through section 905 of S. 815 and section 909 of H.R. 3519. The House provision was accepted, with amendments. The legislative history of multiyear contracting is contained in H.R.Rep. No. 97–71 (May 19, 1981), *reprinted in* 1981 U.S.C.C.A.N. 1781, 1807, 1816–19, 1843–48 and in H.R. Conf. Rep. No. 97–311 (Nov. 3, 1981), *reprinted in* 1981 U.S.C.C.A.N. 1853, 1865–67.

lative oversight. The language and legislative history of each individual statute and the facts of each individual case must be examined; this is a statute-specific and case-specific issue.

In support of plaintiff's assertion that there is "precedent [contrary to *AT & T V*] dating back more than 100 hundred years," plaintiff cites *Clark v. United States,* 95 U.S. 539, 542, 24 L.Ed. 518 (1877), in which the United States Supreme Court held that, although a contract was not in writing and therefore unlawful, claimant may recover under an implied-in-fact contract for *quantum meruit,* the fair value of goods or services. In *Clark,* the federal government used the claimant's ship for eight days. The Supreme Court approved an award to the claimant of $150.00 per day for the eight days, or $1200.00, for its use. *Id.* at 543. "The claimant was applied to for its [the vessel's] use. It was agreed that he should be compensated." *Id.* at 544. Though the contract was declared unlawful, since not reduced to writing as required by statute, the parties had agreed that the claimant would be compensated, forming the basis of the implied-in-fact contract. The decision in *Clark* is consistent with subsequent implied-in-fact contract decisions.

The United States Supreme Court, in *Baltimore & Ohio Railroad v. United States,* stated that, "an agreement will not be implied unless the meeting of minds was indicated by some intelligible conduct, act or sign," and declined to find an implied-in-fact contract under the facts of that case. *Baltimore & Ohio R.R. v. United States,* 261 U.S. 592, 598, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923); *see also Hercules, Inc. v. United States,* 516 U.S. 417, 424, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) ("[T]o give the Court of Claims jurisdiction the demand sued on must be founded on a convention between the parties—'a coming together of minds.'" (quoting *Russell v. United States,* 182 U.S. 516, 530, 21 S.Ct. 899, 45 L.Ed. 1210 (1901))); *Barrett Refining Corp. v. United States,* 242 F.3d 1055, 1059–60 (Fed.Cir.), *reh'g denied* (2001); *Atlas Corp. v. United States,* 895 F.2d 745, 754 (Fed.Cir.), *cert. denied,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). There was a meeting of minds in *Clark,* forming the basis

for the implied-in-fact contract found by the United States Supreme Court. *Clark v. United States,* 95 U.S. at 544.

In contrast, no meeting of minds was found by the United States Court of Appeals for the Federal Circuit in the case of *Atlas Corporation v. United States.* In *Atlas,* claimants argued the breach of an implied-in-fact contract, based on an allegation that the parties intended claimants would be compensated for the stabilization of uranium and thorium milling operations. However, the Federal Circuit concluded otherwise: "[T]he parties have admitted that the extensive tailings stabilization ... was not even contemplated by the parties at the time of the contracts. Therefore, there can have been no negotiation and 'meeting of the minds' that could create an implied-in-fact contract respecting the cost of the stabilization." *Atlas Corp. v. United States,* 895 F.2d at 754. In *Atlas,* a meeting of the minds on the critical term was not found.

Similarly, the plaintiff's complaint and the plaintiff's response to the defendant's motion to dismiss in the present case do not reflect agreement on a cost-reimbursement term. To the contrary, the plaintiff acknowledges urging a cost-reimbursement contract on the government, to no avail. In the plaintiff's own words: "[T]he Government insisted on designating TSSAM as a fixed-price contract .... Northrop Grumman objected to the Government's proposed use of a fixed-price contract .... The Government disregarded Northrop Grumman's objections to the fixed-price contract .... After additional discussions between the parties, the Government issued an ultimatum, giving Northrop Grumman one business day to accept a fixed-price contract." There was no agreement between the parties in the present case to a cost-reimbursement form of contract and, therefore, no support for an implied-in-fact contract theory.

Plaintiff also cites *Barrett Refining Corporation v. United States* in support of its assertion of precedent contrary to *AT & T V.* In *Barrett,* the claimant provided military jet fuel to the government pursuant to four contracts. *Barrett Refining Corp. v. United*

*States,* 242 F.3d at 1058. After the contracts were completed, the price adjustment clause in the contracts was determined to be out of compliance with the Federal Acquisition Regulations, and unenforceable. *Id.* The Federal Circuit reasoned that, since the price escalation clause was unauthorized and unenforceable, there was no express clause covering price escalation, and nothing to preclude an implied-in-fact agreement on that term. *Id.* at 1060. The fundamental element of the implied-in-fact agreement on a price escalation term in *Barrett* was the "Court of Federal Claims' factual finding of a promise by the government to pay at least fair market value. *Barrett [Refining Corp.] 2 [v. United States],* 45 Fed.Cl. [166] at 170 [(1999)]. Indeed the government concedes in its opening brief that the parties 'would have agreed upon a clause providing for the payment of the market price.'" *Barrett Refining Corp. v. United States,* 242 F.3d at 1060. The Federal Circuit agreed with the trial court's finding that the parties intended to provide for fair market value consideration in the event of price escalation. *Id.* Under such facts and circumstances, the Federal Circuit concluded that the parties had an implied-in-fact agreement on a price escalation term. *Id.*

Plaintiff also cites the case of *Urban Data Systems, Inc. v. United States,* 699 F.2d 1147, 1148–49 (Fed.Cir.1983), which involved two General Services Administration contracts to furnish paper computer forms. The two contracts contained price adjustment clauses which were determined to be cost-plus-a-percentage-of-cost provisions in violation of 41 U.S.C. § 254(b) (1976) and 41 C.F.R. § 1–3.401(b) (1976). *Id.* at 1150. An implied-in-fact agreement was found on the invalid price adjustment clauses, based on the government's agreement to pay for the supplies.

It is clear, however, that the Government bargained for, agreed to pay for, and accepted the supplies delivered by Urban. It is also plain that only the price terms of the two subcontracts were invalid—not any other part of those agreements. We agree with the Board that Urban is entitled to reimbursement of a *quantum valebant* basis for the reasonable value in the marketplace of the supplies and concomitant services.

*Urban Data Sys., Inc. v. United States,* 699 F.2d at 1154 (citation omitted). Therefore, *Urban Data Systems* is similar to *Clark* and *Barrett,* in that there was agreement between the parties on the critical term, permitting an implied-in-fact mechanism to resolve the claims. *See Clark v. United States,* 95 U.S. at 544; *Barrett Refining Corp. v. United States,* 242 F.3d at 1060; *Urban Data Systems, Inc. v. United States,* 699 F.2d at 1154. In contrast, in *Atlas,* there was no agreement between the parties on the cost of stabilization and no implied-in-fact agreement on that term. *Atlas Corp. v. United States,* 895 F.2d at 754.

In the present case, there was no mutual agreement between the parties for the TSSAM contract to be a cost-reimbursement type of contract. Therefore, the implied-in-fact mechanism which resolved the *Clark, Barrett* and *Urban Data Systems* cases, relied on by the plaintiff, provides no support to the plaintiff.[7] Furthermore, although plaintiff relies on *Gould, Clark, Barrett* and

---

7. The plaintiff's five counts at issue in its second amended complaint state that the TSSAM contract and P00099 are subject to reformation. The same difficulty plaintiff has in supporting an implied-in-fact agreement for a cost-reimbursement form of contract also is a problem for a theory of reformation to a cost-reimbursement contract. As the court stated in an earlier, unrelated *Northrop Grumman Corporation* case involving a fixed-price United States Marine Corps contract, in which Northrop Grumman attempted, unsuccessfully, to reform to a cost-reimbursement contract:

The remedy of reformation is a narrow one, bringing a contract into conformity with "the true agreement of the parties on which there was a meeting of the minds." *American President Lines, Ltd. v. United States,* 821 F.2d 1571, 1582 (Fed.Cir.1987). Reformation is not intended to be a means by which a court injects itself into the contracting process to create the contract that it determines is best for the situation. *See Atlas,* 895 F.2d at 749 (noting that courts have "no authority to write contracts, or contract clauses, for the United States by means of reformation where there has been no agreement.") (citing *American President Lines,* 821 F.2d at 1582).

*Northrop Grumman Corp. v. United States,* 47 Fed.Cl. at 41.

*Urban Data Systems,* section 8118 was not at issue in any of those cases, nor did the court even address the controlling issue in *AT & T V,* which was whether Congress intended to create a private cause of action for enforcement of a provision, or intended for enforcement to be through legislative or agency procedures.

Plaintiff attempts to distinguish *AT & T V* by noting that contractor AT & T aggressively sought its contract on a fixed-price basis, while contractor Northrop Grumman argued against the fixed-price provision from the beginning. This argument does not assist plaintiff. The defendant's motion to dismiss does not argue that plaintiff waived its claims. Defendant argues, and this court agrees, that *AT & T V* is controlling. Section 8118 "does not create a cause of action inviting private parties to enforce the provision in courts.... Section 8118 simply does not provide implicitly or explicitly for any enforcement of its supervisory and congressional oversight provisions in a judicial forum." *AT & T V,* 307 F.3d at 1379. The Federal Circuit continues, in *AT & T V,* that even if AT & T had stated a valid claim for which relief could be granted, AT & T, under the facts of the case, had waived its claims by aggressively pursuing the fixed-price contract.

> AT & T successfully underbid technically superior competitors to win the RDA [reduced diameter array] contract, and retained the contract with a vigorous defense against a competitor's protest action. Nonetheless, AT & T now argues that the courts must relieve it of the risk that it so aggressively pursued. It is too late now to make that claim.

*AT & T V,* 307 F.3d at 1380. AT & T was vulnerable on both grounds; Northrop Grumman's vulnerability in the present case is on the first ground (that section 8118 did not provide for private enforcement), not waiver.

Plaintiff also attempts to distinguish *AT & T V* from the present case by noting that the Federal Circuit found in *AT & T V* that contractor AT & T, by requesting a fixed-price contact, was able to avoid intrusive government interference that would have in-

creased its costs. In contrast, Northrop Grumman argues that its costs were greatly increased through the government's persistent micromanagement. Placing these statements in context, the Federal Circuit in *AT & T V* stated that:

> Moreover, in a cost-reimbursement contract, the Government retains the right to minimize its risk by supervising closely the contractor's performance. By performing the RDA contract on a fixed-price basis, AT & T avoided the costs of more intrusive government supervision.

*AT & T V,* 307 F.3d at 1381. This statement was part of the Federal Circuit's discussion of waiver in *AT & T V,* which the defendant has not argued in the present case. Furthermore, if an attribute of the fixed-price form of contract is less intrusive government interference, and the government nevertheless excessively interfered, as alleged by Northrop Grumman, thereby increasing costs, then plaintiff may make a claim in that regard. In fact, plaintiff appears to have made such a claim, found as count XII of the second amended complaint, titled "Government Breach of Duty to Cooperate and Not Interfere with Contract Performance." Plaintiff may air its concerns with respect to count XII, which survives the present, section 8118–oriented motion to dismiss. However, the government's alleged excessive interference with the TSSAM contract is not relevant to a motion to dismiss based on section 8118 and whether or not Congress had determined that section 8118 would be enforced, not by private causes of action, but by congressional oversight.

Plaintiff further argues that the contract in *AT & T V* was "otherwise valid," *AT & T V,* 307 F.3d at 1378, and was "simply a failure to abide by housekeeping rules," *AT & T IV,* 48 Fed.Cl. at 160, whereas the alleged violations in the present case were serious and highly inappropriate. Plaintiff reads too much into these phrases taken out of context from two *AT & T* opinions: The "otherwise valid" phrase is taken from the legislative history of section 8118, in which the Senate Report states: "It is the intent of the committee that this section be applied in a manner that best serves the government's interests in the long

term health of the defense industry, and *that this section not be used as the basis for litigating the propriety of an otherwise valid contract." AT & T V,* 307 F.3d at 1378 (quoting S.Rep. No. 100–326, 10th Cong., 2d Sess. at 105 (1988) (emphasis added by the *AT & T V* court)). In determining whether the present TSSAM contract was "otherwise valid," the court will review the plaintiff's other alleged challenges to the contract, which survive the present motion to dismiss, which only addresses the section 8118–oriented counts.

The second phrase, "simply a failure to abide by housekeeping rules" was taken from the Court of Federal Claims' decision in *AT & T IV.* In context, the trial court stated:

> Rather, Section 8118, and the government's failure to abide by it, was identified in the en banc decision simply as "governmental non-compliance with internal review and reporting procedures." 177 F.3d at 1376. Thus, the government's omission was simply a failure to abide by housekeeping rules. And from the disregard of such rules, no actionable claim can arise.

*AT & T IV,* 48 Fed.Cl. at 160 (citation omitted). The court does not read this "housekeeping rules" language as a characterization as to how clear it was that a violation of section 8118 occurred (the plaintiff seems to be arguing that a minor violation of section 8118 occurred in *AT & T,* in contrast with a serious violation of section 8118 in the present case). Instead, the "housekeeping rules" language denotes that section 8118 is not a proper foundation for a private cause of action, but a government requirement to be redressed, as necessary, through congressional oversight and other than through a government contractor's lawsuit. Although plaintiff has read the language of the *AT & T* decisions carefully, looking for an avenue of escape, there is none to be found in this argument.

Plaintiff also attempts to distinguish *AT & T V* from the present case by noting that the *AT & T* contract was fully performed, whereas the TSSAM contract was terminated for the convenience of the government. Plaintiff argues that:

> While a contractor might bear the risk of early termination on a cost-plus contract, or even on an appropriate fixed-price contract, to hold that the Government can force a contractor to accept an inappropriate fixed-price contract in violation of a federal statute, continuously raise costs through intrusive interference, and then cut the contractor loose without its having any hope of recovering those costs would constitute a severe miscarriage of justice.

The contractor, however, is not without potential remedies in the scenario alleged, though section 8118 is not in the arsenal. As noted above, count XII of the plaintiff's second amended complaint, which is unaffected by the defendant's section 8118–oriented motion to dismiss, alleges actionable government interference. Other counts of the amended complaint which survive the present motion to dismiss include count II ("Government Misrepresentations at Contract Award"), count V ("Government Misrepresentations at Contract Renegotiation"), count VIII ("Government Failure to Disclose Superior Knowledge"), count IX ("Government Provision of Defective Specifications"), count X ("Recovery of All Incurred Costs and Reasonable Profit under Termination for Convenience Principles"), count XIII ("Georgia Production Site Facility"), and count XIV ("Disposition and Close–Out Costs Not Included in Contract Price at Termination"). Therefore, the plaintiff's statement that *AT & T V* deprives contractors of "*all* remedies" is inaccurate. *AT & T V* deprives plaintiff of a section 8118 and related procurement regulations/directives remedy, but permits further review of other, traditional remedies, such as those identified above from the plaintiff's second amended complaint.

Finally, plaintiff argues that the *AT & T V* decision seriously threatens the long-term viability and health of the defense industry. This is a procurement policy matter for Congress,[8] and not a reason for this court to

---

**8.** As noted earlier, Congress included section 8118 or section 8118–type provisions in the Defense Appropriation Acts for FY 1988–1993, but then apparently abandoned the practice. *See, e.g.,* DOD Appropriations Act for FY 1994, Pub.L. No. 103–139, 107 Stat. 1418–1484 (1993); DOD

ignore the wishes of Congress that section 8118 be vindicated, not by contractor litigation against the government, but by congressional oversight. Plaintiff's statement also ignores the potential efficacy of traditional contract remedies, identified above from the plaintiff's second amended complaint, and unaffected by the *AT & T V* decision and the present motion to dismiss. Contractors were able to obtain review of their claims prior to the existence of section 8118. Section 8118, by congressional direction, is not part of a contractor's arsenal until Congress alters its posture on the matter and determines to allow it.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss Counts I, III, IV, VI and VII of the plaintiff's second amended complaint is **GRANTED**. Counts I, III, IV, VI and VII of the plaintiff's second amended complaint are **DISMISSED**, with prejudice.[9] This decision does not address, or affect, the remainder of the plaintiff's fourteen-count second amended complaint.

**IT IS SO ORDERED.**

9. The plaintiff has filed a notice with the court indicating that, if the court finds that there is no private right of action to enforce section 8118 and the related procurement regulations and directives, then counts I, III, IV, VI and VII, are "obviated in their entirety."